## STATE OF CONNECTICUT *v.* EDWARD BOWEN

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued November 6, 1974—decision released January 28, 1975

*Anthony V. DeMayo,* public defender, for the appellant (defendant).

*Ernest J. Diette, Jr.,* assistant state's attorney, for the appellee (state).

HOUSE, C. J. The defendant, Edward Bowen, was charged in an information with the crime of sale of a narcotic drug, heroin, in violation of § 19-480 (a) of the General Statutes. A verdict of guilty was returned by the jury and from the judgment rendered thereon the defendant appealed to this court.

The facts in the case, which are not the subject of dispute, may be simply stated as follows: Officer Michael Dilullo of the New Haven police department, while working as an undercover agent for the South Central Regional Crime Squad, was approached by the defendant and asked if he was "looking" to purchase narcotics. Officer Dilullo responded that he was and asked to purchase four bags of heroin. The defendant thereupon reached into his pocket and drew out four glassine bags containing a white powder and handed them to the officer. Officer Dilullo then paid the defendant $20 which concluded the transaction. Abraham Stolman, chief state toxicologist, reported as a result of testing in Hartford that the substance purchased by Officer Dilullo from Bowen contained heroin.

Prior to the selection of the jury, the defendant moved for the dismissal of the entire jury panel on the grounds that it was made up entirely of persons who, as a matter of law, were no longer capable of

sitting as impartial jurors. This motion was denied by the court and the voir dire examination of prospective jurors proceeded. The defendant exhausted his peremptory challenges of prospective jurors. Each time he exercised a challenge, he moved to excuse the entire panel for cause based on their inability, as a matter of law, to sit as impartial jurors. Each time his motion was denied. With respect to each juror selected after the defendant had exhausted his peremptory challenges, counsel for the defendant indicated that he would have exercised a peremptory challenge but for the fact that his challenges had been exhausted because of the refusal of the court to dismiss the entire panel. The defendant based his motion to dismiss the jury panel and his motions to excuse for cause on a claim that the jurors had become biased as a result of incidents in two unreported earlier trials, *State* v. *Myrick* and *State* v. *Pastore,* both of which cases were decided in the same term and involved the same jury array as did the present case.

In the *Pastore* case, the jury returned a verdict of not guilty. After accepting the verdict, the court made the following statement in the jury's presence: "The defendant may be discharged. Ladies and Gentlemen of the jury, I have accepted your verdict, and ordered it recorded. You may be excused. You may be excused with the thanks of the court, but you may also be excused from any further jury service. Adjourn court until tomorrow morning." The daybook kept by the clerk's office which summarizes the doings of the court and which is not a literal recording of what was said reads as follows: "Eight P.M. defendant is order [sic] discharged. Judge Cohen further directed that the jurors be discharged and permanently stricken

from the jury list." In the case of *State* v. *Myrick,* the defendant elected to change his plea from not guilty to guilty after the trial had begun. The jury were permitted to remain in the courtroom while the plea was accepted and during the sentencing. Neither the case of *State* v. *Myrick* nor the case of *State* v. *Pastore* was in any way related to the case of *State* v. *Bowen.*

The defendant's arguments as presented to the trial court in support of his motion and now pressed on appeal can be summarized as follows: First, with reference to the *Myrick* case, he contends that "one inevitable implication" of Myrick's change of plea was that the jury which observed it would be led to believe that it is not only the innocent who avail themselves of the constitutional right to a trial, and the jury could well have been led to believe that it is not only the innocent who assert their innocence. From the incident in the *Pastore* case, the defendant argues that the members of the array who had learned of the judge's disagreement with the verdict and the dismissal of the jury in that case would in future cases feel compelled to reach a verdict which would please the trial judge rather than one based on the evidence of the case; and, that the excusing of the *Pastore* jurors from the array subjected the defendant to a trial by a jury not selected from a fair cross section of the community.

The defendant assigned error to the denial of his motion to dismiss the entire jury panel and the denial of his motion to excuse the individual veniremen for cause. Thus, the basic issue on the appeal is whether the trial court abused its discretion in denying the defendant's motions.

The purpose of the voir dire is to provide information for the court to determine whether a venireman is qualified to act as a juror and to guide each party in exercising the right to peremptory challenges. *Duffy* v. *Carroll,* 137 Conn. 51, 56, 75 A.2d 33. The extent of the voir dire examination of prospective jurors rests in the discretion of the trial court. *Duffy* v. *Carroll,* supra; *State* v. *Mendill,* 141 Conn. 360, 362, 106 A.2d 178. "Clearly, therefore, if there is any likelihood that some prejudice is in the juror's mind which will even subconsciously affect his decision of the case, the party who may be adversely affected should be permitted questions designed to uncover that prejudice. This is particularly true with reference to the defendant in a criminal case. Otherwise, the right of trial by an impartial jury guaranteed to him by article first, § 9, of the constitution of this state might well be impaired." *State* v. *Higgs,* 143 Conn. 138, 142, 120 A.2d 152; see *State* v. *Potter,* 18 Conn. 166, 171; *State* v. *Wilson,* 38 Conn. 126, 137. In the present case, the court permitted the defendant to conduct an extensive and exhaustive voir dire examination of each venireman as to what effect, if any, the *Pastore* and *Myrick* incidents may have had upon his qualifications to sit as a juror in the case. In addition, the court itself directly inquired of the individual veniremen to determine the existence of any possible bias or partiality. From the examination of several of the veniremen, the transcript of which appears as part of the findings, it is evident that most of them were aware of the *Pastore* case and the judge's remarks and that they were also aware of what had transpired in the *Myrick* case; indeed, four of the *Myrick* jurors also sat as jurors in the *Bowen* case. However, all the venire-

men questioned indicated that the knowledge of these events would have no effect on their ability to sit, and no other evidence whatsoever was presented to show that they would be unable to deliberate impartially in the defendant's trial.

As a result of the voir dire examination and in response to the defendant's motion to dismiss the jury panel, the trial court concluded that the jurors selected in the case were capable of sitting impartially and rendering a true and just verdict; that no evidence had been adduced to show that the panel was in any way infected by reason of what had transpired in the *Myrick* or *Pastore* cases; that the panel from which the jurors were selected was representative of the defendant's community regardless of what had transpired in those cases; that the hearing on the voir dire failed to disclose any evidence that the panel was intimidated by the fact that the *Pastore* jury was excused from further service or that the *Myrick* jury was permitted to observe the proceedings related to that defendant's change of plea and the imposition of sentence. The defendant has assigned error to these conclusions as being against the weight of the evidence. The conclusions reached by the trial court are tested by the finding and must stand unless they are legally or logically inconsistent with the facts found or unless they involve the application of some erroneous rule of law material to the case. *State* v. *Villafane,* 164 Conn. 637, 641, 325 A.2d 251; *Lewis* v. *Lewis,* 162 Conn. 476, 480, 294 A.2d 637; *Connecticut Bank & Trust Co.* v. *Bovey,* 162 Conn. 201, 205–206, 292 A.2d 899. We find ourselves in agreement with the court's conclusions which are amply supported by its unattacked finding.

Justification for the dismissal of an entire jury panel or excuse of individual veniremen requires something more than defense counsel's speculation that knowledge of what had transpired in earlier unrelated cases might adversely affect the jury in their consideration of the defendant's case. As we said in *State* v. *Clark,* 164 Conn. 224, 228, 319 A.2d 398, quoting *Mikus* v. *United States,* 433 F.2d 719, 724 (2d Cir.): "This court does not choose to create a set of unreasonably constricting presumptions that jurors be excused for cause due to certain occupational or other special relationships which might bear directly or indirectly on the circumstances of a given case, where, as here, there is no showing of actual bias or prejudice. See *United States* v. *Haynes,* 398 F.2d 980, 983–986 (2d Cir. 1968), cert. denied, 393 U.S. 1120, 89 S. Ct. 996, 22 L. Ed. 2d 124 (1969). 'Impartiality is not a technical conception. It is a state of mind. For the ascertainment of this mental attitude of appropriate indifference, the Constitution lays down no particular tests and procedure is not chained to any ancient and artificial formula.' *United States* v. *Wood,* supra, 299 U.S. at 145, 146, 57 S. Ct. at 185 [81 L. Ed. 78]. Rather, this court adheres to the principle that a defendant must 'raise a contention of bias from the realm of speculation to the realm of fact.' The trial court, in turn, when empaneling a jury, 'has a serious duty to determine the question of actual bias, and a broad discretion in its rulings on challenges therefor.' *Dennis* v. *United States,* 339 U.S. 162, 168, 171–172, 70 S. Ct. 519, 521, 94 L. Ed. 734 (1950). . . . 'Preservation of the opportunity to prove actual bias is a guarantee of a defendant's right to an impartial jury,' *Dennis* v. *United States,* supra, 339 U.S. at 171–172, 70 S. Ct. at 523 [94

L. Ed. 734]. We are satisfied that appellant's trial counsel was given that opportunity and, as noted earlier, we are unable to say that the trial court erred in not finding manifest prejudice, which would have raised the presumption of partiality upon which appellant is necessarily dependent." The defendant clearly failed to raise his contention from the realm of speculation to the realm of fact and "[t]he finding of the trial court upon that issue [the force of a prospective juror's opinion] ought not to be set aside by a reviewing court, unless the error is manifest." *Reynolds* v. *United States,* 98 U.S. 145, 156, 25 L. Ed. 244.

The defendant's remaining assignment of error was not briefed and is, therefore, considered abandoned and requires no discussion. *State* v. *Croom,* 166 Conn. 226, 232, 348 A.2d 556; *State* v. *Grayton,* 163 Conn. 104, 109, 302 A.2d 246, cert. denied, 409 U.S. 1045, 93 S. Ct. 542, 34 L. Ed. 2d 495; Maltbie, Conn. App. Proc. § 327.

There is no error.

In this opinion the other judges concurred.