STATE OF CONNECTICUT *v.* JOHN A. ALMEDA, JR. (10842)

SPEZIALE, C. J., PETERS, HEALEY, PARSKEY and SHEA, Js.

Argued November 3, 1982—decision released February 15, 1983

*C. Robert Satti,* state's attorney, with whom was *Stuart Schimelman,* assistant state's attorney, for the appellant (state).

*Chester Fairlie,* special public defender, for the appellee (defendant).

PARSKEY, J. The defendant in this appeal was indicted by a grand jury for the crime of murder of one Ronald Wynn in violation of General Statutes § 53a-54a (a). The defendant was further charged by information with the crime of attempt to commit the murder of one Ricky Wynn by the use of a firearm in violation of General Statutes §§ 53a-49 (a) (2) and 53a-54a.[1] After a trial to the jury, the defendant was found guilty of murder as charged in the indictment and was found guilty of attempted manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1) as a lesser offense included in the charge of attempted murder under the information.

---

[1] The defendant was also charged by information with the crime of carrying a pistol or revolver without a permit in violation of General Statutes § 29-35. The trial court granted the defendant's motion for acquittal on this charge at the close of the state's evidence.

After the verdicts the defendant, inter alia, filed a motion in arrest of judgment claiming that the court lacked jurisdiction over the charge of attempted manslaughter in the first degree as charged and a motion for arrest of judgment and new trial claiming material prejudice due to the impaneling of a juror who had failed to disclose certain information on voir dire. The court, acting on these motions, arrested the defendant's guilty verdict of attempted manslaughter in the first degree, set aside the murder verdict and ordered a new trial. The state, by leave of the trial court, has appealed these rulings.

On appeal, the state asserts that the trial court erred in setting aside the guilty verdict of attempted manslaughter in the first degree in violation of §§ 53a-49 (a) (2) and 53a-55 (a) (1) on the basis of the court's ruling that such an offense did not exist under Connecticut law. The state also claims as error the trial court's setting aside the jury verdicts and ordering a new trial on the basis of its finding that the defendant had been denied the right to a meaningful voir dire and the right to a fair and impartial trial because a juror had intentionally withheld information which, if disclosed, would have provided grounds for a challenge for cause.

The jury could reasonably have found the following facts: The defendant, John Almeda, and the decedent, Ronald Wynn, had engaged in a dispute over remarks addressed by the decedent to the defendant's girlfriend and had exchanged verbal threats. This encounter occurred at the train station in New Haven on the afternoon of September 18, 1979, as the victims prepared to board a commuter bus to the Electric Boat Company in Groton

where they worked the 5 p.m. to 1:30 a.m. shift. Later, during the early morning hours of September 19, 1979, in front of the gate to the Electric Boat Company, the defendant and the decedent continued their dispute. A brief scuffle ensued, followed by a verbal argument between the defendant, the decedent and a friend of the decedent. The episode ended when the defendant shot the decedent once with a .22 caliber revolver which the defendant had purchased on the street in New Haven the previous day. Immediately after the decedent was shot, the decedent's brother, Ricky Wynn, entered upon the scene and was then shot twice by the defendant. One slug struck Ricky Wynn on the left eyebrow and lodged in front of his left ear, the other penetrated his neck and shattered upon impacting his spine. The decedent died soon after the shooting. Ricky Wynn recovered from his wounds but continues to have some residual problems.

I

The state first asserts as error the trial court's determination that the crime of attempted manslaughter in violation of General Statutes § 53a-55 (a) (1) does not exist under Connecticut law.

In the shooting of Ricky Wynn the court charged the jury on the crime of attempted murder in violation of General Statutes § 53a-54a (a). The court charged as lesser included offenses the crimes of attempted manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1) and attempted assault in the first degree in violation of General Statutes § 53a-59 (a) (1).

After the defendant was found guilty of attempted manslaughter he filed a motion challenging the trial court's jurisdiction over that crime. The court found that the crime of attempted manslaughter in violation of § 53a-55 (a) (1) did not exist under our law. We agree.

It is plain from a reading of General Statutes § 53a-49 (a) that the intent required for attempt liability is the intent required for the commission of the substantive crime.[2] The criminal result must be the conscious object of the actor's conduct. A person is guilty of manslaughter in violation of § 53a-55 (a) (1) when "[w]ith [the] intent to cause serious physical injury to another person, he causes the death of such person or of a third person . . . ." General Statutes § 53a-3 (4) defines "serious physical injury" as "physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ . . . ." Thus, the requisite intent for manslaughter under § 53a-55 (a) (1) is the intent to cause serious physical injury rather than the "intent to cause the death of another person"

---

[2] Subsection (a) of General Statutes § 53a-49 provides: "Sec. 53a-49. CRIMINAL ATTEMPT: SUFFICIENCY OF CONDUCT; RENUNCIATION AS DEFENSE. (a) *A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime he:* (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." (Emphasis added.)

required for the crimes of murder under § 53a-54a[3] or manslaughter under section 53a-55 (a) (2).[4]

Manslaughter committed without an intent to cause the death of another; § 53a-55 (a) (1); is analogous to the concept of involuntary manslaughter, whereas manslaughter committed with an intent to cause death; § 53a-55 (a) (2); is analogous to the concept of voluntary manslaughter.[5] The type of manslaughter charged in this case contemplates

[3] General Statutes § 53a-54a provides in pertinent part: "Sec. 53a-54a. MURDER DEFINED. AFFIRMATIVE DEFENSES. EVIDENCE OF MENTAL CONDITION. CLASSIFICATION. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime. (b) Evidence that the defendant suffered from a mental disease, mental defect or other mental abnormality is admissible, in a prosecution under subsection (a), on the question of whether the defendant acted with intent to cause the death of another person."

[4] General Statutes § 53a-55 (a) (2) provides: "Sec. 53a-55. MANSLAUGHTER IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of manslaughter in the first degree when: . . . (2) with intent to cause the death of another person, he causes the death of such person or of a third person under circumstances which do not constitute murder because he acts under the influence of extreme emotional disturbance, as provided in subsection (a) of section 53a-54a, except that the fact that homicide was committed under the influence of extreme emotional disturbance constitutes a mitigating circumstance reducing murder to manslaughter in the first degree and need not be proved in any prosecution initiated under this subsection . . . ."

[5] Manslaughter under § 53a-55 (a) (2) is an intentional killing mitigated by circumstances evincing extreme emotional disturbance. Thus, the holding herein, that attempted manslaughter in violation of § 53a-55 (a) (1) is not a crime, has no bearing on the offense

death resulting from the intent to cause serious bodily harm and, hence is properly characterized as involuntary manslaughter. No intent to cause death is required.

The illogic of attempted involuntary manslaughter is easily demonstrated. Manslaughter, as herein involved, requires that an individual having the intent to cause serious physical injury to another person causes the death of such person. Involuntary manslaughter is a homicide unintentionally caused. *Commonwealth* v. *Hebert,* 373 Mass. 535, 537, 368 N.E.2d 1204 (1977). Attempt liability requires that the defendant entertain the intent required for the substantive crime. General Statutes § 53a-49 (a). Unless death results there can be no crime of involuntary manslaughter. Thus, the crime of attempted involuntary manslaughter requires a logical impossibility,[6] namely, that the actor in his attempt intend that an unintended death result. Such an anomaly the legislature could scarcely have intended. Accordingly, we hold that attempted manslaughter in violation of § 53a-55 (a) (1) is not a crime cognizable under our law.[7]

Because it may arise at retrial, we allude to the double jeopardy aspects of the present case. The

of attempted manslaughter in violation of § 53a-55 (a) (2), as that crime requires an intent to cause the death of another person, not merely the intent to cause serious physical injury.

[6] This conclusion is in accord with decisions in other jurisdictions; e.g., *Commonwealth* v. *Hebert,* 373 Mass. 535, 368 N.E.2d 1204 (1977); *People* v. *Brown,* 21 App. Div. 2d 738, 249 N.Y.S.2d 922 (1964); see *People* v. *Genes,* 58 Mich. App. 108, 227 N.W.2d 241 (1975) (dictum); and with the commentaries. E.g., LaFave & Scott, Criminal Law § 59; Smith, "Two Problems in Criminal Attempts," 70 Harv. L. Rev. 422, 434 (1957).

[7] Since our determination in part II of this opinion necessitates a remand, we decline to consider the application of *State* v. *Grant,* 177 Conn. 140, 147, 411 A.2d 917 (1979), to the present case.

defendant's conviction of the charge of attempted manslaughter, even though erroneous, implicitly acquitted the defendant of the crime of attempted murder. By returning a guilty verdict on the charge of attempted manslaughter which required only the intent to do "serious physical injury," the jury necessarily had to determine that the defendant did not possess the "intent to cause death" required for the charge of attempted murder. Therefore, double jeopardy bars a retrial on the offense of attempted murder. *Price* v. *Georgia,* 398 U.S. 323, 90 S. Ct. 1757, 26 L. Ed. 2d 300 (1970); *Green* v. *United States,* 355 U.S. 184, 78 S. Ct. 221, 2 L. Ed. 2d 199 (1957); *State* v. *Troynack,* 174 Conn. 89, 99, 384 A.2d 326 (1977). This, coupled with our holding today, mandates that the defendant may only be retried for those crimes which are lesser included offenses of manslaughter as defined in General Statutes § 53a-55 (a) (1) or for those crimes not requiring an intent to cause death, such as assault in the first degree. General Statutes § 53a-59 (a) (1).

## II

After the verdicts were accepted, the court, acting on the defendant's motion for arrest of judgment and new trial, held hearings and found that a juror had intentionally withheld information which, if disclosed, would have provided the basis for a challenge for cause. The court, finding that this nondisclosure deprived the defendant of the opportunity to conduct a meaningful voir dire and of his constitutional right to a fair and impartial jury, set aside the murder verdict, arrested the manslaughter verdict and ordered a new trial. The state contends that the court's action was in error.

The juror, Anthony Carboni, had been first selectman of the town of Franklin from 1959 to 1975. Prior to voir dire examination, Carboni completed a juror information form. On the form he was instructed to indicate with an "X" whether certain items applied to "[him] or to any member of [his] family or household." On the form Carboni indicated that he had held public office. He, however, left blank the item on the form which inquired about previous connections with "any police department, court or other law enforcement agency."

During individual voir dire examination, the defense counsel, inter alia, asked Carboni whether he or any member of his family had ever been the victim of a crime. Carboni responded in the negative. Defense counsel also inquired whether Carboni or any member of his family had been involved in law enforcement activities. Again, Carboni responded in the negative. After further questioning Carboni was selected as a juror and subsequently became foreman of the jury.

After the verdicts, defense counsel learned that the position of first selectman of the town of Franklin carries with it the title of chief of police. The defendant thereupon filed a motion for arrest of judgment and new trial, claiming that the juror by his responses to certain questions had foreclosed him from conducting a meaningful voir dire examination in violation of his constitutional rights.

Acting on the defendant's motion, the court held three evidentiary hearings. In its memorandum of decision the court specifically found that the information intentionally withheld by Carboni indicated that his brother had been an auxiliary state police officer for approximately fifteen years; that

the garage he owned with his brothers had been burglarized four times; that as first selectman he carried the title of chief of police; that on at least one occasion, he completed a firearms transaction record as "Police Chief"; and that he consulted with the state police concerning law enforcement matters in the town on at least seven occasions.

The court further found that these facts, if disclosed, would have provided grounds for a challenge for cause. Considering the totality of the circumstances the court found that the defendant had not been afforded the opportunity to conduct a meaningful voir dire examination to show bias or prejudice which would have justified the court in holding Carboni to be disqualified to sit as a juror. Therefore, the court found that the defendant had been denied his statutory and constitutional rights to a meaningful voir dire examination and to his constitutional right to a trial by a fair and impartial jury.

It is central to note that while the court might have been justified in drawing an inference of actual bias from the facts, especially when considered in light of their initial intentional nondisclosure, the court did not explicitly do so. We do not infer an implied finding of actual bias from the court's conclusory statement that the defendant's constitutional rights to a fair and impartial jury were violated. Indeed, the trial court's reliance on *Mares* v. *State*, 83 N.M. 225, 490 P.2d 667 (1971), demonstrates that the trial court's focus was on the deprivation of the opportunity to exercise a challenge rather than on the existence of actual bias. *Mares* requires a new trial where the defendant establishes that a juror falsely represented or concealed a material fact relevant to the contro-

versy which, if truthfully answered, might establish prejudice or disqualification even though bias or prejudice is not shown to have caused an unjust verdict. Connecticut law is to the contrary.

The remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias. *Smith* v. *Phillips,* 455 U.S. 209, 215, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982). "It seems to us to follow 'as the night the day' that if in the federal system a post-trial hearing such as that conducted here is sufficient to decide allegations of juror partiality, the Due Process Clause of the Fourteenth Amendment cannot possibly require more of a state court system." Id., 218.

The facts found by the trial court were not such to import bias or favor requiring disqualification of the juror as a matter of law. *State* v. *Kokoszka,* 123 Conn. 161, 164, 193 A. 210 (1937). To succeed on a claim of bias the defendant must raise his contention of bias from the realm of speculation to the realm of fact. *State* v. *Bowen,* 167 Conn. 526, 532, 356 A.2d 162 (1975); *State* v. *Clark,* 164 Conn. 224, 228, 319 A.2d 398 (1973). It follows therefrom that the trial court must make a finding of the ultimate fact sought to be proved. A new trial is not required where a juror has given a false answer on voir dire which has the effect of depriving counsel of the opportunity to exercise the right to challenge a juror unless it appears that the party seeking it has been prejudiced in his case by the false answers. *State* v. *Moffett,* 38 Conn. Sup. 301, 311–12, 444 A.2d 239 (1981); *Moynahan* v. *State,* 31 Conn. Sup. 434, 437, 334 A.2d 242 (1974); see *Burns* v. *State,* 84 Conn. 518, 521, 80 A. 712 (1911).

Where "necessary to the proper disposition of the cause," this court may "remand the case for a further articulation of the basis of the trial court's decision." Practice Book § 3060D; *State v. Ostroski,* 184 Conn. 455, 460, 440 A.2d 166 (1981), cert. denied, 459 U.S. 878, 103 S. Ct. 173, 74 L. Ed. 2d 142 (1982). Insomuch as we hold that the trial court's findings on actual juror bias were incomplete, we remand to the trial judge for further articulation. If a finding of actual bias appears on the record, there is no error. If no finding of actual bias can be articulated, there is error, the judgment is set aside and the case is remanded for an evidentiary hearing on the issue of actual juror bias and disposition not inconsistent with this opinion.

In this opinion SPEZIALE, C. J., PETERS and HEALEY, Js., concurred.

SHEA, J. (concurring in part and dissenting in part).

I agree with part I of the opinion.

I disagree with part II which remands the case for further articulation (1) because there is a sufficient finding of actual bias in the memorandum of decision and (2) because deliberate falsehood upon the part of a juror on the voir dire related to matters material to his qualifications as a juror present a situation where bias should be implied.

## I

The portion of the memorandum of decision[1] which I believe constitutes a finding of actual bias is where the court, having referred to "facts or

[1] The full paragraph of the memorandum of decision from which the quoted excerpts have been taken is as follows: "In the present case, the defendant was not prevented from discovering *facts or prejudices on the part of the juror which would have justified challenges for cause* because of time limitations or restrictions on ques-

prejudices on the part of the juror which would have justified challenges for cause," proceeds to find "that by such responses Carboni intentionally failed to disclose certain information *which would have tended to show such facts or prejudices on his part . . . ."* (Emphasis added.) It is clear, therefore, that the trial court has found that this juror intentionally failed to disclose information which would likely have shown that he had prejudices justifying a challenge for cause. The majority do not question the evidentiary basis for that finding and it cannot be successfully challenged in view of the discretion accorded to the trier in making factual determinations. I do not understand how this portion of the memorandum of decision can be construed other than as a finding of actual bias. Is it possible that a candid response by the juror would have disclosed "facts or prejudices on his part" warranting a challenge for cause without his being biased? I do not think so.

## II

I also feel that where a juror has intentionally deceived counsel and the court in matters material to his qualifications, bias should be implied. I do not believe that *Smith* v. *Phillips,* 455 U.S. 209, 102

---

tioning set by the trial court. Rather, the defendant was completely precluded from inquiring into certain matters on voir dire by Carboni's responses to the jury information form and to the questions in issue asked on the voir dire. *The Court finds that by such responses Carboni intentionally failed to disclose certain information which would have tended to show such facts or prejudices on his part,* including the facts that Carboni's brother had been involved in law enforcement activities through his service as an auxiliary state police officer, that Carboni himself, had been involved in law enforcement activities as part of his duties as First Selectman and that, Carboni and both of his brothers had been victims of crimes by virtue of four burglaries at the family garage." (Emphasis added.)

S. Ct. 940, 71 L. Ed. 2d 78 (1982), was intended wholly to foreclose implied bias under such extreme and infrequent circumstances as those presented by this case where deliberate concealment has been found. *Smith* v. *Phillips*, supra, 948 (O'Connor, J., concurring). We should not in this fashion condone a clear violation of the voir dire oath. General Statutes § 1-25. The honesty and integrity of each juror is a fundamental postulate of our judicial system. In the rare case where its falsity has been demonstrated, the verdict cannot stand. I would find no error.