[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
CORRECTED MEMORANDUM OF DECISION IN RE MOTION FOR JUDGMENT OF ACQUITTAL DATED OCTOBER 16, 1995 MOTION FOR A NEW TRIAL DATED OCTOBER 16, 1995 MOTION IN ARREST OF JUDGMENT DATEDNOVEMBER 9, 1995
I.
A jury found Deon Walker guilty of selling cocaine in violation of § 21a-277(a) of the General Statutes. This sale, as submitted to the jury, occurred in Waterbury, Connecticut, on March 20, 1995 to a Hartford, Connecticut police officer, Ezequiel Laureano, who was acting in an undercover capacity. The jury verdict was rendered October 11, 1995.
Walker now brings three post verdict pleadings: a motion for judgment of acquittal, a motion for a new trial, and a motion in arrest of judgment. The first two pleadings are bottomed upon claims arising out of the trial evidence. The third motion is based upon juror misconduct. — Each motion is denied.
 II.
During this jury trial, Officer Laureano testified that he, while working for the Statewide Narcotics Task Force, purchased cocaine from Deon Walker near 31 Laurel Street, Waterbury, on March 20, 1995 at approximately 10:55 p.m. Laureano also testified that he had seen the defendant on two prior occasions in the Laurel Street neighborhood. Detective Michael Gugliotti and Office [Officer] Randy Velez testified that while Walker was CT Page 13956 selling the cocaine to Laureano, Gugliotti and Velez were across the street and from their respective positions saw Deon Walker, whom both Gugliotti and Velez know, carry out the illegal transaction with Officer Laureano.
Deon Walker during the trial testified that he did not sell the cocaine as charged and presented evidence attempting to prove that the police officers had planted the incriminating evidence and were framing him based upon personal bias against him. Walker, in an attempt to impeach the credibility of Detective Gugliotti and Officer Velez, the two surveillance officers, presented a number of photographs and a video film of the physical area where Gugliotti and Velez testified they were located while each was observing Walker selling to Laureano.
Concerning the claim of juror misconduct, set forth in Walker's motion in arrest of judgment, the state reported, post verdict, that John O., an alternate juror discussed the case with a Michael Elder during the trial. In response to this report, the court ordered the state to obtain an affidavit from Elder concerning the circumstances of that conversation. Mr. Elder's affidavit, dated October 25, 1995, was filed with the court and alternate juror John O. was questioned October 27, 1995 in court. In the hearing, this alternate juror testified that he did discuss the case with Elder. John O. additionally volunteered that he had a conversation with juror Michelle P. about the O.J. Simpson trial and the alleged planting of evidence by the Los Angeles Police in the Simpson matter. Subsequently, the court, on November 9, 1995, questioned Michelle P. concerning her conduct as a juror.
 III.
Concerning the defendant's motion for acquittal brought pursuant to § 899 of our Practice Book, the court is satisfied that the body of evidence reasonably and legally supports the jury's verdict and thus the motion is without merit. In rendering its verdict of guilty, the jury obviously rejected the defendant's claims that the police planted the evidence and thus framed him. It was the jury's responsibility to assess the evidence and to determine the facts in accordance with the court's instructions. Upon review, we are satisfied that the jury discharged its duty in accordance with the law.
In both Walker's motion for acquittal and also in his motion CT Page 13957 for a new trial brought pursuant to § 902 of the Practice Book, the defendant seeks post verdict relief based upon the claimed perjurious testimony of Detective Gugliotti and Officer Velez as well as the tainted ability of Officer Laureano to identify the defendant. The court thinks these claims also to be without any merit.
Walker during the trial attempted to impeach the testimony that Detective Gugliotti and Officer Laureano gave concerning their respective physical locations as they observed Walker sell the cocaine to Laureano. The jury, upon examining that evidence, principally comprised of photographs and a video, rejected the defendant's claim. Now Walker suggests that this evidence proves the officers in question were lying to the jury and this court ought grant him his requested post verdict relief.
The court, upon a review of the trial evidence, and the defendant's post verdict claims, discerns no indication of perjurious testimony on the part of Detective Gugliotti or Officer Velez. In the opinion of the court, the testimony of each of the two police officers in question was straightforward and tended to be confirmed by the photos that the state itself offered during its case in chief. We certainly don't think that the evidence offered by the defendant in his attempt to impeach Detective Gugliotti and Officer Velez was of such a pristine quality that it necessarily proves that one or both police officers committed perjury during the trial.
Walker also claims in his motion for judgment of acquittal, that Officer Laureano's identification of the defendant was infirm because it was based upon the unreliable hearsay of Officer Velez. This claim has no legal merit. Laureano testified that he saw Walker in the Laurel Street area on two occasions prior to purchasing the cocaine in this case from the defendant on March 20, 1995. Laureano revealed in his testimony an ability to identify Walker from Laureano's own personal recollection, which the jury obviously found credible, and which we don't find legally infirm.
 IV
Finally, Walker in his motion in arrest of judgment, argues that juror Michelle P. was intentionally biased in considering Walker's defense that he was framed by the police and that the CT Page 13958 police officers planted the evidence in this case against him. Parenthetically, we note that Walker does not complain about alternate juror John O's impermissible conduct in discussing the case with Mr. Elder during the trial. However, based upon our own inquiry and responsibility to assure a fair trial for Mr. Walker, we conclude that this misconduct by alternate John O. did not have a pre judicial impact upon the jury's ultimate verdict and the defendant's right to receive a fair trial.
From the post verdict evidentiary hearings in this case during which both alternate juror John O. and juror Michelle P. testified, we find that, during the trial, there was a discussion in the jury deliberation room principally between John O. and Michelle P. about only the O.J. Simpson trial and these two members of the jury panel expressed contrary opinions about the issue of whether the Los Angeles Police Officers planted evidence in connection with the Simpson matter.[1]
Further, we conclude that there was no discussion prior to jury deliberations taking place about the merits of Walker's defense in this case of being framed by the police. Further, we find that Michelle P. is an intelligent, responsible and credible woman. Accordingly, we conclude that her mind as a juror, as she indicated on voir dire, was open throughout this trial to considering responsibly the defendant's claims of being framed by the police with planted evidence.
Accordingly, we hold that Walker has failed to prove any actual juror bias. State v. Almeda, 189 Conn. 303, 312-13
(1983) and 196 Conn. 508-09 (1985).
Each motion is denied and orders may enter accordingly.
WILLIAM PATRICK MURRAY, J.
A Judge of the Superior Court