14-4700-cr(L)
U.S. v. Moreno

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

_____

August Term, 2015

(Argued: December 9, 2015   Decided: February 22, 2016)

Docket No. 14-4700-cr; 14-4709-cr

_____

UNITED STATES OF AMERICA,

*Appellee*,

— v. —

JAVIER MORENO,

*Defendant-Appellant*.

_____

B e f o r e:

CALABRESI, POOLER, and LYNCH, *Circuit Judges.*

_____

Javier Moreno appeals from his sentence for illegally re-entering the United States.  He argues that the sentence was procedurally unreasonable because the district court erred in holding that his prior Connecticut conviction for attempted second-degree assault was a conviction for an "aggravated felony" under U.S.S.G. § 2L1.2(b)(1)(C) and therefore triggered an eight-level increase in his guideline offense level.  We agree, and therefore we REMAND for vacatur of the judgment and resentencing.

MALVINA NATHANSON, New York, New York, *for Defendant-Appellant* Javier Moreno.

ROBERT M. SPECTOR, Assistant United States Attorney (Deborah R. Slater, Assistant United States Attorney, *on the brief*), for Deirdre M. Daly, United States Attorney for the District of Connecticut, New Haven, Connecticut.

GERARD E. LYNCH, *Circuit Judge*:

Defendant-appellant Javier Moreno appeals from judgments entered in the United States District Court for the District of Connecticut (Warren W. Eginton, *Judge*), following his plea of guilty to illegal reentry, in violation of 8 U.S.C. § 1326(a), and his admission that he had violated a condition of a previously-imposed term of supervised release. The district court sentenced Moreno principally to 33 months' imprisonment on the illegal reentry conviction, and 18 months' imprisonment for the violation of supervised release, to be served consecutively.[1] The sole issue on this appeal is whether, in calculating Moreno's

---

[1] Moreno, who had been removed from the United States in May 2006 and again in September 2007, pled guilty to illegal reentry in 2010, and was sentenced to imprisonment for 24 months and three years of supervised release, including a special condition prohibiting his reentry into the United States "without written permission from the Secretary of the Department of Homeland Security." Judgment, United States v. Moreno, No. 10-cr-50 (WWE) (D. Conn. May 12, 2010), ECF No. 15.

advisory sentencing guidelines recommendation, the district court correctly

applied U.S.S.G. § 2L1.2(b)(1)(C), which carries an eight-level specific offense

characteristic increase, by determining that Moreno's prior conviction in

Connecticut state court for attempted assault in the second degree was a

conviction for an aggravated felony within the meaning of that guideline.[2]

We conclude that it did not, and therefore remand to the district court for

vacatur of the judgment and resentencing.

## BACKGROUND

On January 16, 2007, Moreno pled guilty to attempted assault in the second

degree in violation of Conn. Gen. Stat. § 53a-60. Neither the description of the

charge at the plea colloquy nor the judgment of conviction identified which of

that statute's six subsections applied to his conduct.[3] The only evidence in the

---

[2] Moreno also argues that the district court erred by treating as mandatory a Guidelines recommendation that sentences imposed for supervised release violations run consecutively to other sentences being served by the defendant, even though the judge has discretion to impose a concurrent sentence. Moreno further contends that his sentence was substantively unreasonable. In light of our disposition, we need not reach those issues.

[3] The charge recited at the plea colloquy and judgment of conviction cite generally to the Connecticut assault statute without identifying any specific subsection. As discussed in detail below, not every subsection of the Connecticut statute qualifies for an eight-level offense level increase under U.S.S.G. § 2L1.2(b)(1)(C).

3

record regarding the offense conduct is the plea colloquy which states, in relevant part:

> THE CLERK: Javier Moreno, on or about September 13th of 2005, you're charged with attempt to commit assault in the second degree in violation of 53a-60, 53a-49. How do you plead, guilty or not guilty?
> THE DEFENDANT: Yes.
> THE CLERK: Guilty or not guilty?
> THE DEFENDANT: Guilty.
> [PROSECUTOR]: September 13th of 2005 at his residence in Willimantic, Your Honor, he and the victim got into a verbal dispute. She walked into their bedroom, sat on the bed, he then came after her, grabbed her by the neck with his hands, threw her on the bed, started choking her making it difficult for her to breathe. He did cause some minor scratches.
>
> At some point, Your Honor, she was able to scream. He then got off of her and fled the scene. Police officers ultimately responded, noted the minor injuries, and ultimately apprehended the defendant.
>
> This is an agreed-upon recommendation, Your Honor: a three-year sentence, suspended, with three years probation. If the Court accepts this disposition, the state's prepared to nolle any open counts and files. . . .
> [DEFENSE COUNSEL]: That is our agreement, Your Honor.

G.A. 2-3. Neither the court nor any party said anything more about the offense conduct during the plea colloquy. The state court subsequently concluded that there was a factual basis for the plea, accepted the plea, and sentenced Moreno to three years' incarceration, suspended, and three years' probation.

Before the district court in the present case, Moreno repeatedly argued, both in writing, and orally, that the plea colloquy did not contain an admission by Moreno that could be used to determine whether he violated one of the subsections of the Connecticut statute that constitute aggravated felonies. After rejecting Moreno's objection, the district court applied the aggravated felony enhancement, calculated the guideline sentencing recommendation as 33 to 41 months, and sentenced Moreno to 33 months' imprisonment, to be followed by an additional 18 month consecutive term for the violation of supervised release.

On appeal, Moreno argues that the district court erred in relying on the statements made by the Connecticut prosecutor during the plea colloquy to find, under the modified categorical approach, that Moreno had been convicted of an aggravated felony. In addition to arguing that such reliance was appropriate, the government argues that we may affirm Moreno's sentence because his prior conviction was categorically an aggravated felony, insofar as attempted second-degree assault under Connecticut law requires an intentional assault.

## DISCUSSION

"We review de novo all questions of law relating to the district court's application of a federal sentence enhancement." United States v. Beardsley, 691 F.3d 252, 257 (2d Cir. 2012). While we "apply clear error review to a district

5

court's factual findings regarding the nature of a prior offense," United States v. Brown, 629 F.3d 290, 293 (2d Cir. 2011), questions concerning "the district court's authority to make a factual finding about the nature of the conviction . . . are . . . questions of law," Beardsley, 691 F.3d at 257 (internal quotation marks omitted) (alteration in original).   "The government bears the burden of showing that a prior conviction counts as a predicate offense for the purpose of a sentencing enhancement." United States v. Savage, 542 F.3d 959, 964 (2d Cir. 2008).   "The district court should ordinarily begin all sentencing proceedings by correctly calculating the applicable Guidelines range, . . . [and] commits procedural error . . . by failing to calculate the Guidelines range or by making a mistake in its Guidelines calculation . . . ." United States v. Preacely, 628 F.3d 72, 79 (2d Cir. 2010) (internal quotation marks omitted).

U.S.S.G. § 2L1.2(b)(1)(C) provides for an eight-level increase to the base offense level for illegal reentry if the defendant was previously convicted of an aggravated felony.  Under § 2L1.2(b)(1)(D), any other previous felony conviction generates only a four-level increase.  The commentary for § 2L1.2(b)(1)(C) states that the term "aggravated felony" carries the same meaning as it does in 8 U.S.C. § 1101(a)(43), which provides that "aggravated felony" includes a "crime of

violence (as defined in [18 U.S.C. § 16] . . .) for which the term of imprisonment [is] at least one year." U.S.S.G. § 2L1.2(b)(1)(C) cmt. n.1(B)(3(A). Section 16 in turn defines a "crime of violence" as, in relevant part, "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 16(a). Moreno argues that his Connecticut conviction for attempted assault in the second degree does not qualify as a "crime of violence" within the meaning of § 16(a), and that the district court accordingly erred in applying an eight-level increase to his offense level rather than a four-level increase that applies to other felony convictions.

In determining whether a prior conviction can serve as a predicate offense for a federal sentence enhancement, courts may apply either a categorical or modified categorical approach. Beardsley, 691 F.3d at 259. Under the categorical approach, "we consider the offense generically, that is to say, we examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." Begay v. United States, 553 U.S. 137, 141 (2008). By contrast, under the modified categorical approach, courts "may consider facts underlying the prior conviction," Beardsley, 691 F.3d at 259, "to determine which alternative element in a divisible statute

formed the basis of the defendant's conviction," Descamps v. United States, 133

S. Ct. 2276, 2293 (2013). However, as discussed in more detail below, courts may

only take into account facts that can be determined based on specific categories of

"adequate judicial record evidence," Shepard v. United States, 544 U.S. 13, 20

(2005). Accordingly, the modified categorical approach requires a two-step

process: "first, we determine if the statute is divisible, such that some categories

of proscribed conduct render an [enhancement appropriate] and some do not;

second, we consult the record of conviction to ascertain the category of conduct of

which the [defendant] was convicted." Lanferman v. Bd. of Immigration Appeals,

576 F.3d 84, 88-89 (2d Cir. 2009) (internal quotation marks omitted).[4]

Connecticut's second degree assault statute provides, in pertinent part:

> (a) A person is guilty of assault in the second degree
> when:
> (1) With intent to cause serious physical injury to another
> person, the actor causes such injury to such person or to
> a third person; or
> (2) with intent to cause physical injury to another person,
> the actor causes such injury to such person or to a third
> person by means of a deadly weapon or a dangerous

---

[4] We have applied this framework to sentencing enhancements under the advisory
Sentencing Guidelines, see, e.g., Savage, 542 F.3d at 964, as well as to statutory
sentencing enhancements, see, e.g., United States v. Rosa, 507 F.3d 142, 151 (2d Cir.
2007), and the government does not dispute its applicability here.

8

> instrument other than by means of the discharge of a firearm; or
>
> (3) the actor recklessly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument . . . .

Conn. Gen. Stat. § 53a-60.   As both parties acknowledge, Conn. Gen. Stat. § 53a-60 is divisible, defining several distinct offenses, most of which would constitute "crimes of violence" within the meaning of 18 U.S.C. § 16(a), but at least one of which would not.[5]   Cf. Berroa-Soto v. Holder, 316 F. App'x 27, 30 (2d Cir. 2009). Specifically, § 53a-60(a)(3), which criminalizes reckless conduct, does not constitute a crime of violence under § 16(a), as it does not have "as an element the use, attempted use, or threatened use of physical force against the person or property of another."   18 U.S.C. § 16(a).

When applying the modified categorical approach, courts may consider the facts underlying the prior conviction to determine to which section of a divisible

---

[5] It is not clear whether the district court relied on 18 U.S.C. § 16(a) or § 16(b) to find that Moreno's prior conviction was a "crime of violence."  Section 16(b), which provides an alternative definition for "crime of violence," is nearly identical to the provision of the Armed Career Criminal Act found to be void for vagueness in Johnson v. United States, 135 S. Ct. 2551 (2015).  We need not determine whether § 16(b) survives Johnson, however, as we have previously held that the Connecticut statute is not categorically a crime of violence under § 16(b), see Berroa-Soto, 316 F. App'x at 30, and the government has abandoned reliance on that provision in this appeal.

statute the defendant pled.  However, that inquiry is narrowly circumscribed, and is limited, in the context of guilty pleas, to "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information."  Shepard, 544 U.S. at 26.

Shepard makes clear that factual admissions and judicial findings in the context of a guilty plea must be adopted or confirmed by the defendant to be considered in determining the nature of the defendant's crime by the modified categorical approach.  See id. at 16 (allowing courts to examine "any explicit factual finding by the trial judge *to which the defendant assented*") (emphasis added); id. at 20 (explaining that "adequate judicial record evidence" may include "the statement of factual basis for the charge . . . shown by a transcript of plea colloquy or by written plea agreement presented to the court, or by a record of comparable findings of fact *adopted by the defendant upon entering the plea*") (emphasis added); see also United States v. Rosa, 507 F.3d 142, 158 (2d Cir. 2007). Accordingly, courts have considered statements made during a plea colloquy by someone other than the defendant in applying the modified categorical approach

only when the defendant adopted the statements in some overt fashion.  See, e.g.,

Savage, 542 F.3d at 966 (government may not rely on prosecutor's factual

assertions during a plea colloquy where defendant did not endorse them); Rosa,

507 F.3d at 158-59 (defendant's silence did not "assent" to judge's characterization

of offense); United States v. Taylor, 659 F.3d 339, 348 (4th Cir. 2011) (facts set forth

by the prosecutor could be used in applying the modified categorical approach

where, after the prosecutor's recitation, defense counsel stated that defendant had

no "additions or corrections"); United States v. Jimenez-Banegas, 209 F. App'x

384, 390 (5th Cir. 2006) (finding that defendant assented to the prosecutor's

version of events by explicitly confirming portions thereof and not objecting to the

rest).

Here, the district court determined that Moreno's offense was a crime of

violence by looking to the prosecutor's account of the facts during the plea

proceeding.  However, Moreno was never asked to confirm the factual basis for

his plea.  Nor can the guilty plea itself be taken to have adopted the prosecutor's

statements, since Moreno pled guilty to violating § 53a-60 (without specifying any

particular subsection) *before* the prosecutor's recitation of the offense conduct.  At

no point did Moreno allocute to any facts about the offense.  After the

11

prosecutor's account, Moreno was not asked to, and did not, assent to the prosecutor's assertions; he merely remained silent.[6] Where, as here, a defendant pleads guilty prior to a prosecutor's allegations about the offense conduct, and does not confirm those allegations in any manner, the defendant cannot be said to have assented to, or adopted, those allegations. Absent such an adoption, the prosecutor's account may not be used to establish, under the modified categorical approach, the particular portion of a divisible statute that the defendant violated. Cf. Rosa, 507 F.3d at 158-59 (holding that defendant's silence was not an admission where defendant had no reason to contradict judge's statement).

The government concedes, as it must, that the only description of the offense conduct at the plea colloquy came from the prosecutor, and therefore was not a "colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant." Shepard, 544 U.S. at 26. It argues, however, that the plea colloquy constitutes a "comparable judicial record" that may be considered because "[n]othing about the prosecutor's factual basis

---

[6] The government does not argue that defense counsel's statement that the prosecutor had accurately stated "our agreement," G.A. 3, constitutes such an assent, presumably because that statement is most naturally read as referring to not the prosecutor's description of the offense conduct, but to the description of the agreed terms of the plea bargain that immediately preceded counsel's comment.

suggests a *mens rea* of recklessness," Gov't Br. 32, and the state court later found there was a factual basis for the plea. But the government's quotation from Shepard is truncated; the full statement by the Supreme Court was that the inquiry under the modified categorical approach is limited, in the case of a guilty plea, to "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record *of this information*." Shepard, 544 U.S. at 26 (emphasis added). Read in context, the universe of "comparable judicial record[s]" is limited to documents that contain the information described immediately prior – that is, the terms of the charging document or plea agreement and the plea colloquy in which the defendant confirms the factual basis for the plea. Shepard does not allow a court to consider a record that does not purport to contain such information when applying the modified categorical approach.[7]

---

[7] The only issue before us in this appeal is whether the district court correctly calculated the Guidelines range. While the Connecticut prosecutor's statements may not be considered for that purpose, the district court is not bound by the advisory Guidelines, and in determining an appropriate sentence in light of the factors set forth in 18 U.S.C. § 3553(a), the court may consider any information that has "sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a). We express no view as to the substantive reasonableness of the sentence imposed below, or on what sentence should be imposed on remand.

The government argues that, even if reliance on the plea colloquy was misplaced, we may still affirm Moreno's sentence because his conviction for attempted second-degree assault was *categorically* a crime of violence since the only provision of the Connecticut statute that is not categorically an aggravated felony is Conn. Gen. Stat. § 53a-60(a)(3), which criminalizes reckless conduct, and it is legally impossible to *attempt* to commit reckless assault.  Moreno does not dispute that attempted reckless assault is a legally impossible crime in Connecticut.  Under Connecticut law, "[a] person acts 'recklessly' with respect to a result . . . when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur."  Conn. Gen. Stat.  § 53a-3(13).  Attempt occurs when a person "[i]ntentionally engages in conduct which would constitute the crime" or "intentionally does or omits to do anything which . . . is an act or omission constituting a substantial step" in the crime.  Id. § 53a-49(a).  Because it is legally impossible to intend to commit a crime that is defined, as § 53a-60(a)(3) is, by an unintended result, one cannot attempt to commit reckless second degree assault under Connecticut law.  Cf. Gill v. I.N.S., 420 F.3d 82, 91 (2d Cir. 2005) (discussing attempted reckless assault under New York law); State v. Almeda, 189 Conn. 303, 309 (1983) (noting that it is logically impossible under

14

Connecticut law to attempt to commit involuntary manslaughter as involuntary manslaughter is defined by an unintended result).

As we have previously recognized, however, pleading guilty to impossible crimes may make "practical sense in terms of reaching a contextually appropriate sentence or sentencing range." Gill, 420 F.3d at 91. Thus, while the crime of attempted reckless assault may not exist in the abstract, there is no infirmity in a plea to attempted reckless assault. We cannot infer any mental state from a plea to attempted recklessness, see id., and accordingly cannot presume, on the basis of the plea alone, that Moreno pled guilty to one of the sections of the Connecticut statute that criminalizes intentional assault. The foregoing analysis is not altered by the fact that Moreno pled guilty to § 53a-60 generally rather than to § 53a-60(a)(3); Moreno's plea does not exclude the possibility that he committed a reckless assault, and pled guilty to *attempted* assault, to reduce his sentence exposure as part of a plea bargain.

As there is no evidence in the record of conviction that would enable us to determine which section of the divisible Connecticut statute Moreno pled guilty to, it cannot be determined, applying the categorical or modified categorical approach, that Moreno's Connecticut conviction was an aggravated felony. The

district court therefore erred by finding that it was, and thereby increasing

Moreno's offense level by eight levels.

## CONCLUSION

For the foregoing reasons, the case is REMANDED to the district court for

vacatur of the judgment and resentencing consistent with this opinion.

16