STATE OF CONNECTICUT *v.* CORNELIUS FLOWERS
(SC 17334)

Borden, Katz, Palmer, Vertefeuille and Zarella, Js.

534

Argued January 4—officially released June 13, 2006

*William B. Westcott*, for the appellant (defendant).

*Denise B. Smoker*, assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's

attorney, and *Patrick Griffin*, assistant state's attorney, for the appellee (state).

*Opinion*

KATZ, J. The defendant, Cornelius Flowers, appeals, following our grant of certification, from the judgment of the Appellate Court affirming the judgment of the trial court convicting the defendant of burglary in the first degree in violation of General Statutes § 53a-101 (a) (2).[1] *State* v. *Flowers*, 85 Conn. App. 681, 858 A.2d 827 (2004). The sole issue in this appeal is whether the Appellate Court properly rejected the defendant's claim that the trial court's instruction misled the jury by allowing it to find the defendant guilty of conduct that is not a cognizable crime. Id., 701. We answer that question in the negative, and, accordingly, we reverse the Appellate Court's judgment.

The record reveals the following procedural history. The state charged the defendant in a three count, long form information. The first count of the information charged the defendant with burglary in the first degree in violation of § 53a-101 (a) (2) on August 5, 2000, at approximately 3 a.m. at 163-4 Mark Lane in Waterbury. Specifically, the state alleged that the defendant had entered "unlawfully in a building with intent to commit a crime therein and in the course of committing the offense, he intentionally inflicted or attempted to inflict bodily injury on [Stephen] Alseph . . . ." The second count of the information charged the defendant with attempt to commit assault in the first degree in violation

---

[1] General Statutes § 53a-101 (a) provides in relevant part: "A person is guilty of burglary in the first degree when he enters or remains unlawfully in a building with intent to commit a crime therein and . . . (2) in the course of committing the offense, he intentionally, knowingly or recklessly inflicts or attempts to inflict bodily injury on anyone."

of General Statutes §§ 53a-49 (a) (2) and 53a-59 (a) (4),[2] specifically alleging that on the same date the defendant had entered 163-4 Mark Lane at approximately 3 a.m. "with intent to cause serious physical injury to another person and while aided by two other persons actually present, intentionally did an act which under the circumstances as he believed them to be, constituted a substantial step in a course of conduct planned to culminate in an assault in the first degree . . . [by attempting] to cause serious physical injury to [Stephen] Alseph while aided by two other persons actually present . . . ." The third count charged the defendant with attempt to commit assault in the first degree in violation of §§ 53a-49 (a) (2) and 53a-59 (a) (1); see footnote 2 of this opinion; alleging that on the same date and at the same location the defendant had entered the premises at approximately 3 a.m. "with intent to cause serious physical injury to another person by means of a dangerous instrument [and] did an act which under the circumstances as he believed them to be, constituted a substantial step in a course of conduct planned to culminate in an assault in the first degree . . . [by attempting] to cause serious physical injury by means of a dangerous instrument to [Stephen] Alseph."

The jury was unable to reach a verdict on the two counts of attempt to commit assault in the first degree,

[2] General Statutes § 53a-49 (a) provides in relevant part: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . or (4) with intent to cause serious physical injury to another person and while aided by two or more other persons actually present, he causes such injury to such person or to a third person . . . ."

but returned a verdict of guilty on the first degree burglary count. The trial court declared a mistrial on the two attempted assault counts and rendered judgment of conviction on the burglary count in accordance with the jury's verdict. The defendant appealed from the judgment of conviction to the Appellate Court claiming, inter alia, that the trial court's instructions improperly had allowed the jury to find the defendant guilty if it found that he had entered Stephen Alseph's apartment with the intent to commit an attempted assault. *State* v. *Flowers*, supra, 85 Conn. App. 698. The Appellate Court affirmed the trial court's judgment of conviction. Id., 706. Thereafter, we granted the defendant's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly conclude that the trial court's instruction on the charge of burglary in the first degree did not mislead the jury?" *State* v. *Flowers*, 272 Conn. 910, 863 A.2d 703 (2004).

The Appellate Court opinion recites the following evidence presented to the jury. "On the night of August 4, 2000, the defendant went to the Malibu Club (club) in Waterbury, as did Stephen Alseph. Sometime later, [Stephen] Alseph's wife, Keisha Alseph, arrived at the club with her friends, Chantel Paris and Tierra Mourning. At closing time, approximately 2 a.m. on August 5, 2000, Stephen Alseph had an argument with Paris and Mourning in the parking lot of the club. Keisha Alseph left the club in the company of Paris and Mourning. Stephen Alseph left the club alone.

"Keisha Alseph and her friends arrived at the parking lot adjacent to the apartment at 163-4 Mark Lane about the same time Stephen Alseph did. Another argument ensued, and Paris struck Stephen Alseph on the head with a beer bottle, causing a small cut. Paris and Mourning got into their vehicle and left. The Alsephs entered their apartment and prepared for bed.

"Approximately thirty minutes later, they heard a loud bang at the front door. Three men entered the bedroom and assaulted Stephen Alseph. One of the men struck him on the head with a lamp, causing him to fall onto the bed, bleeding. Keisha Alseph attempted to protect her husband as the three men continued to beat him. After making reference to 'some girl,' the three men left the apartment. Stephen Alseph grabbed a knife and chased them. The men saw him, and one of them said, 'He's coming back for more.' When they saw the knife, the men got into an automobile and sped away. Stephen Alseph chased the vehicle on foot for a distance, and he saw Paris and Mourning driving away from the scene.

"Stephen Alseph returned to his apartment where his wife was waiting. The police arrived about five minutes later. The police found Stephen Alseph bleeding from the arms, face and head. Keisha Alseph had cuts on her stomach and arms. Stephen Alseph was taken to St. Mary's Hospital where he received sutures for his head wound. Keisha Alseph informed the police that the defendant was one of the three assailants. She recognized him because he had worked with one of her cousins at a McDonald's restaurant. She also implicated Paris and Mourning.

"A short while later, the police received a telephone call from Victoria Vasquez, the defendant's former girlfriend. Vasquez informed the police that at approximately 2:45 a.m., she began receiving telephone calls from the defendant. She said that he had called and immediately hung up. Vasquez stopped answering the telephone, and the defendant left messages on her answering machine to 'stop playing games' because he was 'in trouble and needed her help.' The defendant arrived at Vasquez' home about fifteen minutes later. Vasquez refused to let the defendant inside because she was afraid of him and had a protective order against

him. The defendant left. Vasquez informed the police that she thought that the defendant had returned to an address on Wall Street [in Waterbury] from which his telephone calls had originated.

"The police went to 72 Wall Street and found the defendant and his cousin, Devon Hicks, hiding under a bed in the first floor apartment. The defendant identified himself as Thomas Flowers. The police separately transported Keisha Alseph and Stephen Alseph to the Wall Street apartment to identify the two men who had been found hiding there. Keisha Alseph and Stephen Alseph identified the defendant and Hicks as two of the men who had assaulted them that night. They did not waver in their identification of the defendant, whom they also identified at trial. The defendant was arrested.

"A few days after his arrest, the defendant met with Vasquez at a commuter parking lot in Cheshire with assistance from Hicks. The defendant wanted to know why Vasquez had called the police. The defendant and Vasquez met again on February 13, 2001, the day before Vasquez was to report to the office of the state's attorney pursuant to a subpoena issued in the case against Hicks. The defendant asked Vasquez to lie for him, to tell the police that he was on foot that night and that he was with her at the time of the burglary. Vasquez initially agreed to the defendant's request because she was trying to work things out with him for the sake of their child. Five months later, however, Vasquez told the prosecutor that the defendant had come to her house in a light colored automobile and that he had not been with her earlier [on the evening of the burglary]. The defendant subsequently telephoned Vasquez and threatened her not to testify against him.

"The defendant testified at trial to establish his alibi that he was not present during the break-in. He testified that he had been at the club on the night in question

and had witnessed a disturbance in the parking lot. According to the defendant, someone had sprayed Mace, which got into his eyes. He and Hicks then went to the home of his friend, Stephen Gyadu, located at 72 Wall Street, to wash his face. He telephoned Vasquez to ask her for a ride because Hicks had fallen asleep. Because Vasquez would not talk to him, he walked to her house. He walked back to [72] Wall Street and lay down on the floor next to Hicks' bed. The defendant denied assaulting Stephen Alseph and also denied giving the police a false name." *State* v. *Flowers*, supra, 85 Conn. App. 685–88.

After the jury found the defendant guilty of burglary in the first degree; see footnote 1 of this opinion; the defendant appealed from the trial court's judgment of conviction to the Appellate Court, claiming, inter alia, that, pursuant to the trial court's instructions, in order to find the defendant guilty of burglary in the first degree, the jury would have to have found that, when he unlawfully entered the building, the defendant had intended to commit the inchoate crime of attempted assault.[3] Specifically, the defendant claimed that, by charging that the state had to prove that the defendant unlawfully had entered the building with the intent to commit an attempted assault, the court, in effect, charged the jury that to convict the defendant it had to prove that he unlawfully had entered the premises intending only to attempt an assault, but not to complete it. *State* v. *Flowers*, supra, 85 Conn. App. 700–701. Thus, the defendant contended that the trial court's instruction would have permitted the jury to convict the defen-

---

[3] The defendant also asserted the following claims, each of which the Appellate Court rejected: (1) there was insufficient evidence to convict him of burglary in the first degree; (2) the burglary conviction was inconsistent with the jury's inability to reach a verdict on the charges of attempt to commit assault; (3) the jury's verdict was the result of an impermissible compromise; and (4) the trial court improperly instructed the jury on reasonable doubt. See *State* v. *Flowers*, supra, 85 Conn. App. 688–700.

dant even if he had no intent to commit the underlying crime of assault.

Although the defendant had not raised that claim before the trial court, the Appellate Court concluded that the unpreserved claim could be reviewed under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[4] but that it must be rejected. *State* v. *Flowers*, supra, 85 Conn. App. 705. That court reasoned that it was not reasonably possible that the jury had been misled by the instruction under the facts of the case. Id., 705–706. This certified appeal followed.

On appeal to this court, the defendant contends that the Appellate Court's judgment was improper because the trial court instructed the jury on a theory of liability that is not cognizable. He contends that, because the trial court improperly had instructed the jury[5] that it

[4] "Under *Golding*, a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . The first two [prongs of *Golding*] involve a determination of whether the claim is reviewable; the second two . . . involve a determination of whether the defendant may prevail." (Citation omitted; internal quotation marks omitted.) *State* v. *Samuels*, 273 Conn. 541, 556–57, 871 A.2d 1005 (2005).

[5] The trial court gave the following instruction to the jury: "In count one— and I have to make sure I follow this information, this blueprint, which is what you're going to have to be careful to do—the defendant is charged with the crime of burglary in the first degree in violation of [§] 53a-101 of the Penal Code, which provides as follows: A person is guilty of burglary in the first degree when, as it applies in this case, he unlawfully enters— which I'll define for you—that is the first element—in a building—and I'll define 'building' for you—with intent to commit a crime therein. And I previously defined 'intent' for you. You are to recall and apply that definition. So, a person is guilty of burglary in the first degree when he unlawfully enters a building with the intent to commit a crime therein, and in the course of committing the offense, as it relates to this case, he intentionally inflicts or attempts to inflict bodily injury to another person. . . .

"For you to find the defendant guilty of the charge of burglary in the first

could find the defendant guilty based on conduct that did not constitute a crime, his judgment of conviction should be reversed. Echoing the dissent from the Appellate Court opinion; see id., 706–708 (*Flynn, J.,* dissenting); the defendant contends that, because of the trial court's improper instructions, which twice told

degree, the state must prove the following elements beyond a reasonable doubt: That the defendant knowingly [made] . . . an unlawful entry . . . [and] entered the premises of 163-4 Mark Lane; that such premises constituted a building . . . and that the unlawful entry was [e]ffected or occurred with the defendant's intent to commit a crime in the building. *Here, the crime being attempted [was] assault in the first degree.* That is, in the course of committing the offense, the defendant intentionally inflicted or attempted to inflict bodily injury to someone . . . ." (Emphasis added.)

Following a sidebar conference, the court continued: "Such premises constituted a building . . . *that the unlawful entry was [e]ffected or occurred with the defendant's intent to commit a crime in that building, and I said that the specific crime is attempted assault;* and that in the course of committing that offense the defendant intentionally inflicted or attempted to inflict bodily injury to a person, here being [Stephen] Alseph. . . .

"You must further determine whether the unlawful entry was [e]ffected or occurred with the defendant's intent to commit a crime in that building. And I previously defined 'intent' for you and you will recall that definition and apply it here. And I'll just say briefly that intent relates to the condition of mind of the person who commits the act, his purpose in doing it.

"A person acts 'intentionally' with respect to a result or to conduct when his conscious objective is to cause such result or engage in such conduct. So you must further determine whether the unlawful entry was [e]ffected or occurred with the defendant's intent to commit a crime in that building, 163-4 Mark Lane. Furthermore, the necessary intent to commit a crime must be an intent to commit either a felony or a misdemeanor other than the crime of burglary, and I charged you that as a matter of law that the crimes charged fit this category. . . .

"For you to find the defendant guilty of burglary in the first degree, certain additional aggravating factors must be proven beyond a reasonable doubt. One of the aggravating factors exists if the state proves that the defendant in the course of committing the offense intentionally inflicted or attempted to inflict bodily injury to someone, here, Stephen Alseph. 'Bodily injury' means impairment of physical condition or pain. The defendant need not have actually inflicted bodily injury on anyone as long as he attempted to inflict such injury on someone in the course of committing the crime—an act deemed to be in the course of an offense if it occurs in an attempt to commit the offense or flight after the attempt or commission." (Emphasis added.)

the jury that the crime the defendant had intended to commit when he entered the Alsephs' apartment illegally was attempted assault, it was reasonably possible that the jury had been misled to conclude that it could find the defendant guilty on the basis of a legal impossibility, namely, intent to commit an attempted (i.e., incomplete) assault. We agree that the jury charge impermissibly expanded the legal standard under which the defendant could have been convicted of burglary in the first degree, and, accordingly, we reverse the Appellate Court's judgment.

We begin with our well settled standards by which we review the trial court's instructions to the jury. "It is . . . constitutionally axiomatic that the jury be instructed on the essential elements of a crime charged. . . . The due process clause of the fourteenth amendment [to the United States constitution] protects an accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. . . . Consequently, the failure to instruct a jury on an element of a crime deprives a defendant of the right to have the jury told what crimes he is actually being tried for and what the essential elements of those crimes are." (Citations omitted; internal quotation marks omitted.) *State* v. *Denby*, 235 Conn. 477, 483–84, 668 A.2d 682 (1995).

If an improper jury instruction is of constitutional magnitude, "the burden is on the state to prove harmlessness beyond a reasonable doubt." *State* v. *Spillane*, 255 Conn. 746, 757, 770 A.2d 898 (2001). "An alleged defect in a jury charge which raises a constitutional question is reversible error if it is reasonably possible that, considering the charge as a whole, the jury was misled. . . . In performing harmless error analysis, we keep in mind that [i]n determining whether it was indeed reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not

to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge." (Citations omitted; internal quotation marks omitted.) Id.

Finally, "a jury instruction that improperly omits an essential element from the charge constitutes harmless error if a reviewing court concludes beyond a reasonable doubt that the omitted element was *uncontested and supported by overwhelming evidence*, such that the jury verdict would have been the same absent the error . . . ." (Emphasis in original; internal quotation marks omitted.) *State* v. *Montgomery*, 254 Conn. 694, 738, 759 A.2d 995 (2000), quoting *Neder* v. *United States*, 527 U.S. 1, 17, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999).

Before addressing what is at issue in this case, it is useful to identify what is not at issue. First, the state does not dispute that it would be improper to allow the jury to find the defendant guilty of burglary if it found that he had entered the apartment not intending to complete a crime therein, but rather intending just to attempt to commit a crime. In other words, the state does not contest that a theory of liability requiring a finding that the defendant intended an unintentional result from his conduct is not cognizable. See *State* v. *Beccia*, 199 Conn. 1, 4, 505 A.2d 683 (1986) (conspiracy to commit arson in third degree not cognizable because arson requires reckless mental state); *State* v. *Almeda*, 189 Conn. 303, 307, 455 A.2d 1326 (1983) (attempted manslaughter not cognizable because not possible to have specific intent to commit unintentional killing), on appeal after remand, 196 Conn. 507, 493 A.2d 890

(1985);[6] see also *State* v. *Crosswell*, 223 Conn. 243, 263, 612 A.2d 1174 (1992) ("persons cannot attempt or conspire to commit an offense that requires an unintended result" [internal quotation marks omitted]). Second, the state does not challenge the defendant's assertion that the trial court did in fact provide such an improper instruction. Third, the state does not challenge that the first two prongs of *State* v. *Golding*, supra, 213 Conn. 239, were satisfied, thus permitting review of this unpreserved claim. See footnote 4 of this opinion.

Rather, the state's response to the defendant's claimed impropriety is that, despite any impropriety in the trial court's instructions, it is not likely that they had an effect on the jury. See *State* v. *Alston*, 272 Conn. 432, 447, 862 A.2d 817 (2005) (recognizing that reviewing court considers effect of charge on jury rather than component parts). Essentially, the state contends that it was not reasonably possible that the jury was misled by the instruction because of the trial court's subsequent correct statement of the law. According to the state, although "the court did instruct the jury that the state had to prove that the defendant entered the [Alsephs'] apartment with the intent to commit the crime of attempted assault, the court's last statement to the jury on this issue was that any crime, felony or

---

[6] In *State* v. *Almeda*, supra, 189 Conn. 303, this court considered whether a defendant legally could be convicted of attempted manslaughter in violation of General Statutes §§ 53a-49 (a) (2) and 53a-55 (a) (1). The court first reasoned that the intent required for attempt liability is the intent required for the commission of the substantive crime, and, as such, the criminal result must be the conscious objective of the actor's conduct. Id., 307. The court further acknowledged that the crime of manslaughter in the first degree, in violation of § 53a-55 (a) (1), required the intent to cause serious injury, rather than the death of the victim. Id., 307–309. Accordingly, the court recognized that a person, in committing manslaughter in violation of § 53a-55 (a) (1), does not intend that death occur. Therefore, the court concluded that "the crime of attempted involuntary manslaughter requires a logical impossibility, namely, that the actor in his attempt intend that an unintended death result." Id., 309.

misdemeanor, other than the crime of burglary was sufficient to satisfy the intent requirement.[7] . . . This final, proper instruction, which conformed with the offense as charged in the long-form information, cleared up any confusion caused by the court's earlier charge." See footnote 5 of this opinion (setting forth relevant portion of jury instruction).

Additionally, the state points to its closing arguments to the jury, which focused on Keisha Alseph's beliefs that her friends, Paris and Mourning, had set up the burglary and the assault of her husband and that, when the defendant and the other two assailants entered the Alsephs' apartment, they had a commonality of purpose and were intending to inflict serious physical injury on Stephen Alseph. Finally, the state contends that the jury was not misled by the trial court's improper instructions because both an attempt to commit an assault and a completed assault require that the actor intended to bring about the elements of the completed assault. Therefore, according to the state, either way, the jury knew it had to find that the defendant had intended to assault Stephen Alseph.

We disagree with the state that it was not reasonably possible that the jury was misled. Intentional conduct is defined as conduct "with respect to a result or to conduct described by a statute defining an offense when [a person's] conscious objective is to cause such result or to engage in such conduct . . . ." General Statutes § 53a-3 (11). Thus, to be guilty of attempt, a defendant's conscious objective must be to cause the result that would constitute the substantive crime. A person cannot, however, attempt to commit a crime that requires that an unintended result occur. In other words, a per-

---

[7] The state relies on the following statement by the trial court: "[T]he necessary intent to commit a crime must be an intent to commit either a felony or a misdemeanor other than the crime of burglary, and I charged you that as a matter of law that the crimes charged fit this category."

son cannot be charged with entering a building intending the specific result of failing to commit a crime.

In this case, when the trial court instructed the jury on the element of intent in connection with the charge of burglary, it told the jury that it had to decide whether "the unlawful entry was [e]ffected or occurred with the defendant's intent to commit a crime in the building. Here the crime being attempted [was] assault in the first degree." This statement was soon thereafter reinforced when the court reminded the jury that to find the defendant guilty it had to find "that the unlawful entry was [e]ffected or occurred with the defendant's intent to commit a crime in that building, and I said that the specific crime is attempted assault . . . ." The court never corrected those statements. The only other guidance the court provided to the jury was that, when he entered the Alsephs' apartment, the defendant had to have an intent to commit a crime, a felony or a misdemeanor, other than the crime of burglary.

In essence, by charging that the state had to prove that the defendant unlawfully entered the building with the intent to commit an attempted assault, the court charged the jury that the state had to prove that the defendant "unlawfully entered the premises intending only to attempt an assault but not to complete it. Thus, the defendant would have had no intent actually to commit the underlying crime of assault and, therefore, he did not enter the building with the intent to commit a crime." *State* v. *Flowers*, supra, 85 Conn. App. 707 (*Flynn, J.*, dissenting).

"We repeatedly have stated that [t]he jury [is] presumed to follow the court's directions in the absence of a clear indication to the contrary." (Internal quotation marks omitted.) *State* v. *Ancona*, 270 Conn. 568, 616, 854 A.2d 718 (2004), cert. denied, 543 U.S. 1055, 125 S. Ct. 921, 160 L. Ed. 2d 780 (2005); accord *State* v. *Fields*,

265 Conn. 184, 207, 827 A.2d 690 (2003); *State* v. *Negron*, 221 Conn. 315, 331, 603 A.2d 1138 (1992). With no other direction from the trial court correcting its improper instruction, the presumption that the jury followed the court's instruction and, accordingly, found the defendant guilty of first degree burglary based on attempted assault is essentially irrebuttable, the state's three contentions to the contrary notwithstanding.

First, citing to *State* v. *Prioleau*, 235 Conn. 274, 289–90, 664 A.2d 743 (1995), the state contends that, despite the aforementioned presumption, closing arguments of counsel can supplant the trial court's essential role of providing proper jury instructions. Significantly, in that case, although we did consider arguments of counsel to determine whether an *inadequacy* in the trial court's instructions played a critical role, the trial court's impropriety did not address a fundamental misstatement of the law on an essential element of the offense. Specifically, in *Prioleau*, we agreed with the defendant that the trial court's instruction on self-defense inadequately had informed the jury of its need to evaluate the defendant's subjective belief as to the amount of force necessary to repel the murder victim's alleged attack. Id., 285. We concluded, however, that, "from the facts, the issues and the instructions as a whole, there is no reasonable possibility that this infirmity misled the jury to [reach] an improper verdict." Id. We noted that the state neither presented evidence, nor argued to the jury, that the defendant was guilty of murder because he had used an excessive degree of force in protecting himself. Id., 289–90. Accordingly, the critical issue for the jury to decide was whether the defendant reasonably believed, when he shot the victim, that the victim was about to use deadly force or inflict great bodily harm upon him. Id., 290. The defendant had acknowledged the propriety of the trial court's instruction on that feature of self-defense. We therefore

concluded that, "notwithstanding the trial court's *inadequate* instruction regarding the defendant's belief in the necessity to use deadly physical force, because the court clearly directed the jury to evaluate the defendant's belief in the danger he claims to have faced from the defendant's subjective perspective, we conclude that it is not reasonably possible that the jury was misled to [reach] an improper verdict. . . . In sum, we conclude that in this case, where the parties, the court and, most importantly, the jury, clearly understood the critical issue to be whether the defendant, at the time he shot and killed the victim, reasonably believed that the victim was about to use deadly force, and where the court properly instructed the jury on this crucial issue, the court's imperfect instruction regarding the defendant's belief in the acceptable degree of force was harmless beyond a reasonable doubt." (Citations omitted; emphasis added.) Id., 291. It is clear that the state's argument was not dispositive in *Prioleau* and that, to the extent that we relied on it, we did so in the context of an inadequate instruction. In our view, there is a critical distinction between those circumstances and the state's attempt here to use its arguments to the jury to rectify the trial court's misstatement of the law. "It is well established that an instruction containing a misstatement of the law is more likely to be prejudicial than an instruction that contains an omission or an incomplete statement of the law. *Henderson* v. *Kibbe*, 431 U.S. 145, 155, 97 S. Ct. 1730, 52 L. Ed. 2d 203 (1977); *State* v. *Kurvin*, [186 Conn. 555, 563, 442 A.2d 1327 (1982)]." *State* v. *Preyer*, 198 Conn. 190, 198, 502 A.2d 858 (1985).

Second, the state contends that, even if the jury were otherwise predisposed to follow the trial court's earlier improper instructions, the trial court's final statement to the jury on the subject—that the object crime of the burglary charged by the state was either a felony or

a misdemeanor—somehow cured its earlier recurring defective instructions. Although a correct statement, it did nothing to alter the prior twice repeated directive that the "specific crime" at issue was attempted assault. Thus, this statement cannot be viewed as a cure to the court's defective instruction. Cf. *State* v. *Alston,* supra, 272 Conn. 450 (concluding that, even if we were to assume that instruction initially misled jury, trial court's "lengthy and accurate final instructions on the state's burden of proof" cured that defect); *State* v. *Reid,* 254 Conn. 540, 560, 757 A.2d 482 (2000) (possible improper instruction cured by court's repeated proper instruction).

Finally, the state contends that, because both an attempted assault and a completed assault require an intent to bring about the completed assault, the court's improper charge that, when he entered the Alsephs' apartment unlawfully the defendant intended to commit an attempted assault, was harmless. We disagree. The instruction, that an intent to bring about the completed assault is a necessary element of attempted assault, was indeed provided to the jury in the context of the two attempted assault charges. Had the trial court charged the jury in connection with the burglary charge that, when the defendant illegally entered the building, he intended to commit an assault, but failed to instruct on the intent element required for an assault, reliance on the elements provided in the attempted assault instructions might have cured the omission. As we know, however, the trial court did not omit an intent instruction but, rather, added an improper attempt intent, which was not cured by its other instructions.[8]

---

[8] Moreover, because the defendant was not charged with and thus was not convicted by overwhelming evidence of assault, we cannot rely on the intent element of that crime to cure the defect in this case. *State* v. *Montgomery,* supra, 254 Conn. 738 ("a jury instruction that improperly omits an essential element from the charge constitutes harmless error if a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court and to remand the case to that court for a new trial.

In this opinion BORDEN, PALMER and VERTE-FEUILLE, Js., concurred.

ZARELLA, J., dissenting. The majority concludes that the jury likely was misled by the trial court's instruction that, to find the defendant, Cornelius Flowers, guilty of burglary in the first degree, the jury must determine, inter alia, that the defendant had entered the victim's apartment unlawfully with the intent to commit an attempted assault therein. Specifically, the majority concludes that the trial court's instruction improperly permitted the jury to find the defendant guilty of burglary in the first degree if it determined that the defendant "had entered the [victim's] apartment not intending to complete a crime therein . . . but rather intending just to attempt to commit a crime." I would conclude, however, that it is not reasonably possible that the jury was misled by the trial court's improper instruction because both attempt to commit assault in the first degree; General Statutes §§ 53a-59[1] (a) and 53a-49 (a) (2);[2] and assault in the first degree; General Statutes

verdict would have been the same absent the error" [internal quotation marks omitted]), quoting *Neder* v. *United States*, supra, 527 U.S. 17.

[1] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument; or . . . (4) with intent to cause serious physical injury to another person and while aided by two or more other persons actually present, he causes such injury to such person or to a third person . . . ."

[2] General Statutes § 53a-49 (a) provides in relevant part: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

§ 53a-59 (a); require proof of the same mental state, namely, "intent to cause serious physical injury to another person . . . ." General Statutes § 53a-59 (a) (1) and (4). Because the trial court's instruction permitted the jury to find the defendant guilty of burglary in the first degree only if it found that the defendant had entered the victim's home unlawfully with intent to cause serious physical injury to another person, I would affirm the judgment of the Appellate Court. Accordingly, I respectfully dissent.

To illuminate the flaws in the majority's reasoning, I first turn to General Statutes § 53a-101 (a), which provides in relevant part that "[a] person is guilty of burglary in the first degree when he enters or remains unlawfully in a building with *intent to commit a crime therein* . . . ." (Emphasis added.) It is well established that, "[t]o constitute burglary . . . the accused must have entered, remained, or broken and entered with the requisite specific criminal intent, and the gravamen of the offense is the intent with which a breaking and entry has been effected." 12A C.J.S. 218–19, Burglary § 44 (2004). Thus, the crime of burglary "is complete once there has been an unlawful entering or remaining in a building with the intent to commit a crime in that building," regardless of whether the accused ever acts on his or her initial criminal intent. *State* v. *Little*, 194 Conn. 665, 675, 485 A.2d 913 (1984); see also 12A C.J.S. 224, supra, § 48 ("[t]o constitute burglary it is not necessary that the intended crime shall be committed or attempted to be committed, as the offense is complete as soon as the premises are broken and entered . . . with the necessary intent, and the success or failure of the venture is immaterial"). For example, when "the claim is that the crime intended to be committed by the burglar was larceny, the fact that there [was] no actual larceny does not bar a conviction for burglary. . . . The larceny, if committed, is a separate and dis-

tinct offense." (Citations omitted.) *State* v. *Little*, supra, 675–76.

With this background in mind, I now address whether burglary with intent to commit attempted assault in the first degree is a cognizable crime. General Statutes § 53a-49 (a) provides in relevant part that a person is guilty of an attempt to commit a crime if he or she acts with "the kind of mental state required for commission of the crime . . . ." This court previously has observed that "[i]t is plain from a reading of . . . § 53a-49 (a) that the intent required for attempt liability is the [same] intent required for the commission of the substantive crime. The criminal result must be the conscious object of the actor's conduct." *State* v. *Almeda*, 189 Conn. 303, 307, 455 A.2d 1326 (1983). Pursuant to General Statutes § 53a-59 (a) (1) and (4), the mental state required for commission of assault in the first degree is "intent to cause serious physical injury to another person . . . ." Moreover, the crime of assault in the first degree is complete once the defendant "causes such injury to such person or to a third person . . . ." General Statutes § 53a-59 (a) (1) and (4). Thus, a defendant who attempts to commit assault in the first degree intends to cause serious physical injury to another person and, consequently, necessarily intends to commit the completed crime of assault in the first degree.

The majority concludes, however, that a defendant who intends to commit attempted assault may intend "only to attempt an assault but not to complete it." (Internal quotation marks omitted.) This conclusion finds no support in either law or logic. If a defendant does not intend to complete the crime of assault in the first degree, that is, if he does not intend to cause serious physical injury to another person, then he does not have the mental state necessary to attempt to commit assault in the first degree. See generally 22 C.J.S. 144, Criminal Law § 115 (b) (1989) ("'[a]ttempt' with respect to a

crime has been held *more comprehensive than 'intent'*, in that intent is a quality of mind and implies a purpose only, while an attempt implies an effort to carry that purpose to execution" [emphasis added]).

Moreover, the mental state necessary to attempt to commit assault in the first degree and the result of the completed crime are in perfect congruence. Thus, the present case easily is distinguishable from *State* v. *Almeda*, supra, 189 Conn. 303, and its progeny. In *Almeda*, the defendant, John A. Almeda, Jr., was convicted of attempt to commit manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1) and § 53a-49 (a) (2). General Statutes § 53a-55 (a) provides in relevant part that a person is guilty of manslaughter in the first degree when "(1) [w]ith intent to cause serious physical injury to another person, he causes the death of such person or of a third person . . . ." We determined that § 53a-55 (a) (1) is "analogous to the concept of involuntary manslaughter"; *State* v. *Almeda*, supra, 308; because "[n]o intent to cause death is required." Id., 309. Consequently, we concluded that the crime of attempt to commit involuntary manslaughter is not a cognizable crime because it "requires a logical impossibility, namely, that the actor in his attempt intend that an unintended death result." Id.; see also *State* v. *Crosswell*, 223 Conn. 243, 263, 612 A.2d 1174 (1992) ("persons cannot attempt or conspire to commit an offense that requires an unintended result" [internal quotation marks omitted]); cf. *State* v. *Beccia*, 199 Conn. 1, 5, 505 A.2d 683 (1986) (conspiracy to commit arson in third degree not cognizable crime because arson requires reckless mental state); 2 W. LaFave, Substantive Criminal Law (2d Ed. 2003) § 11.3 (b), pp. 215–16 (Defendant logically cannot attempt to commit completed crime that "consists of recklessly or negligently causing a certain result, for if there were an intent to cause such a result then the attempt would

not be to commit that crime but rather the greater crime of intentionally causing such result. For example, so long as the crime of attempt is deemed to require an intent-type of mental state, there can be no such thing as an attempt to commit criminal-negligence involuntary manslaughter. The consequence involved in that crime is the death of the victim and an act done with intent to achieve this, if an attempt at all, is attempted murder." [Internal quotation marks omitted.]). Unlike *Almeda*, the present case does not present a logical impossibility because the result of the completed crime of assault in the first degree, namely, serious physical injury to another person, necessarily is intended when one possesses an "intent to cause serious physical injury to another person . . . ." General Statutes § 53a-59 (a) (1) and (4).

I emphasize that it is immaterial, for purposes of this appeal, whether the jury reasonably could have found that the defendant ever had acted on his intent to cause serious physical injury to another person. See General Statutes § 53a-49 (a) (2) (requiring "an act or omission constituting a substantial step in a course of conduct planned to culminate in [the] commission of the crime"). This is because, as I previously explained, the gravamen of the crime of burglary is the criminal intent with which the breaking and entering has been effected. See 12A C.J.S. 218–19, supra, § 44. It is not necessary that the defendant ever commit or attempt to commit the intended crime. See *State* v. *Little*, supra, 194 Conn. 675–76. Accordingly, it is sufficient that the jury reasonably could have found that the defendant had entered the victim's apartment unlawfully with intent to cause serious physical injury to another person therein.

Finally, I address the defendant's claim that, because the crime of burglary is an inchoate crime in that it requires only an intent to commit a separate crime upon unlawful entry, the crime intended cannot be another

inchoate crime such as attempt to commit assault in the first degree. Specifically, the defendant claims that "the trial court's instruction that the defendant could burglarize a dwelling with the intention of committing an attempted crime therein amounts to an attempted attempt, which does not exist at law." (Internal quotation marks omitted.) This claim has no merit because it suffers from the same logical flaw as the majority opinion, namely, reliance on the theory that one who intends to attempt to commit the crime of assault in the first degree does not intend to complete it. As I previously explained, there is no substantive distinction between intent to commit attempted assault in the first degree and intent to commit assault in the first degree. Accordingly, I would reject the defendant's claim.

For the foregoing reasons, I would conclude that it is not reasonably possible that the jury was misled by the trial court's improper instruction. See *State* v. *Chandler*, 342 N.C. 742, 752, 467 S.E.2d 636 (trial court's improper instruction that burglary can be committed with intent to commit attempted larceny not plain error because, inter alia, "the crucial element in burglary is the intent to commit a larceny, which is the identical intent necessary to commit an attempted larceny"), cert. denied, 519 U.S. 875, 117 S. Ct. 196, 136 L. Ed. 2d 133 (1996). Viewing the trial court's instruction as a whole, I would conclude that it was adequate to explain to the jury that the defendant could not be found guilty of burglary in the first degree unless it determined that the defendant had entered the victim's apartment unlawfully with intent to cause serious physical injury to another person.[3] Accordingly, I respectfully dissent.

---

[3] The trial court instructed the jury in relevant part: "The state has charged the defendant with the crime of attempt to commit assault in the first degree in that, *with the intent to commit the crime of assault in the first degree,* he intentionally, under circumstances as he believed them to be, took actions that were a substantial step in a course of conduct that the defendant had planned to culminate in his commission of the crime of attempted assault

in the first degree. Is that correct? General Statute[s] [§] 53a-49 (a) (2) states: *a person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for the commission of a crime,* he intentionally does or omits to doing anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of a crime.

"*The first element the state must prove beyond a reasonable doubt is that the [defendant] had the kind of mental state required for the commission of the crime of attempted assault in the first degree.*" (Emphasis added.)

The trial court thereafter instructed the jury on the essential elements of attempt to commit assault in the first degree: "The defendant is charged with the crime of attempted assault in the first degree in violation of [§] 53a-59 (a) (4) of the Penal Code, which provides as follows—and I've already defined 'attempt' for you, and you are to recall and apply that definition— a person is guilty of assault in the first degree when, *with intent to cause serious physical injury to another person* and while aided by two or more other persons actually present, he causes such injury to such person or to a third person.

"For you to find the defendant guilty of this charge, the state must prove the following elements beyond a reasonable doubt: *one, that the defendant intended to cause serious physical injury to another person*; two, that the defendant caused serious physical injury to another person—to that person or another person; and three, that the defendant did so while aided by two or—here, in this case, while aided by two other persons actually present." (Emphasis added.)