## STATE OF CONNECTICUT *v.* SHERMAN MANSON
### (AC 27561)

Beach, Robinson and Peters, Js.

Argued October 13—officially released December 22, 2009

*William B. Westcott*, special public defender, for the appellant (defendant).

*James M. Ralls*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Herbert E. Carlson, Jr.*, former supervisory assistant state's attorney, for the appellee (state).

*Opinion*

PETERS, J. "A defendant who moves to suppress identification evidence bears the initial burden of proving that the identification resulted from an unconstitutional procedure." *State* v. *Fullwood*, 193 Conn. 238, 244, 476 A.2d 550 (1984). The principal issue in this criminal appeal is whether the trial court properly denied the defendant's motion to suppress evidence of the victim's pretrial identification, allegedly resulting from an unconstitutional photographic array procedure. We agree with the trial court's denial of the defendant's motion, and we affirm the judgment against the defendant.

On November 16, 2005, the state filed a four count substituted information, charging the defendant, Sherman Manson, with two counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1),[1] one count of burglary in the first degree in violation of General Statutes (Rev. to 2003) § 53a-101 (a) (2)[2] and

---

[1] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person . . . ."

[2] General Statutes (Rev. to 2003) § 53a-101 (a) provides in relevant part: "A person is guilty of burglary in the first degree when he enters or remains unlawfully in a building with intent to commit a crime therein and . . . (2) in the course of committing the offense, he intentionally, knowingly or recklessly inflicts or attempts to inflict bodily injury on anyone."

one count of unlawful restraint in the first degree in violation of General Statutes § 53a-95 (a).[3] A jury found the defendant guilty of all charges, and the court sentenced him to a total effective term of forty-five years of imprisonment. The defendant's appeal principally challenges the admissibility at trial of evidence of his identification by the victim.

The jury reasonably could have found the following facts regarding the incident of sexual assault and burglary that underlie the defendant's conviction. On October 2, 2004, the victim, who was then eighty-nine years old, was returning from grocery shopping to her second floor apartment. A friend was helping her with the grocery bags. Following her friend's departure, because she noticed someone walking behind her, she stopped putting her groceries inside the apartment and stepped to the porch railing. She called to Robert Wilson, who lived in the neighborhood and was then in the parking lot, and asked who was behind her. Wilson spoke to the individual, asking: "Sherman, is that you up there?" The defendant stepped into view of Wilson and said, "yeah, it's me, Uncle Rob, it's me." Wilson then left. Despite the victim's continued concern about the proximity of the defendant, she resumed putting her groceries away.

Over the victim's protest, the defendant began throwing her groceries into her apartment, allegedly to help her, and then followed her inside. He first pushed her down on the floor and then moved her onto her divan, where he commenced sexually assaulting her. Her glasses fell off when she was thrown onto the divan, and she closed her eyes to avoid looking at the defendant during the assault. After assaulting the victim, the

---

[3] General Statutes § 53a-95 (a) provides: "A person is guilty of unlawful restraint in the first degree when he restrains another person under circumstances which expose such other person to a substantial risk of physical injury."

defendant went to the back door of the apartment while the victim attempted to escape out the front door. He noticed her before she could escape, threw her down again on the divan and assaulted her again. He then left, telling the victim that he would return the next day.

After the defendant left, the victim discovered that money was missing from her wallet, though she did not see the defendant take it. According to the victim, during the assault, the defendant told her his name, address and age.

After the defendant left the victim's apartment, she asked a neighbor, Edna Elkey, to come over. When Elkey arrived, the victim told her of the assault by the defendant. Elkey told her daughter, Charlene Ledbetter, of the assault, and Ledbetter called the police. The victim was taken to a hospital where an examination revealed injuries consistent with sexual assault.

On October 5, 2004, the victim was interviewed at her home by police officers and shown a photographic array that included the defendant's picture. Although the victim initially identified the defendant's photograph, she added that another photograph resembled her assailant as well and that her lack of certainty related to the fact that the photographs were too small. The police returned to the victim's home with the same photographic array with enlarged photographs, one on each page. The victim again identified the defendant's photograph, saying, "that's the one I know is Sherman."

On appeal, the defendant claims that the court improperly (1) admitted evidence of the pretrial photographic array identification made by the victim, (2) permitted the victim to make an in-court identification, (3) excluded expert testimony about the unreliability of eyewitness identifications and memory of subjects exposed to highly stressful situations and (4) charged

the jury concerning the burglary in the first degree count. We are not persuaded.

I

The defendant's principal claim is that the court improperly denied his motion to suppress the pretrial photographic array identification made by the victim. The court concluded that the photographic array was not unnecessarily suggestive, and that, even if it had been suggestive, it was inherently reliable and therefore admissible.

"[A] claim of an unnecessarily suggestive pretrial identification procedure is a mixed question of law and fact." *State* v. *Marquez*, 291 Conn. 122, 137, 967 A.2d 56, cert. denied, 558 U.S. 895, 130 S. Ct. 237, 175 L. Ed. 2d 163 (2009). "[B]ecause the issue of the reliability of an identification involves the constitutional rights of an accused . . . we are obliged to examine the record scrupulously to determine whether the facts found are adequately supported by the evidence and whether the court's ultimate inference of reliability was reasonable. . . . [T]he required inquiry . . . is two-pronged: first, it must be determined whether the identification procedure was unnecessarily suggestive; and second, if it is found to have been so, it must be determined whether the identification was nevertheless reliable based on an examination of the totality of the circumstances. . . . To prevail on his claim, [a] defendant has the burden of showing that the trial court's determinations of suggestiveness and reliability both were incorrect. . . .

"Because the inquiry into whether evidence of pretrial identification should be suppressed contemplates a series of factbound determinations, which a trial court is far better equipped than this court to make, we will not disturb the findings of the trial court as to subordinate facts unless the record reveals clear and manifest error." (Citation omitted; internal quotation marks omitted.) *State* v. *Ledbetter*, 275 Conn. 534, 547–48, 881 A.2d

290 (2005), cert. denied, 547 U.S. 1082, 126 S. Ct. 1798, 164 L. Ed. 2d 537 (2006).

The defendant maintains that the court's admission of the victim's photographic identification in this case was improper because it failed both prongs of the test for constitutionality. He argues that the victim (1) did not make a definitive identification of the defendant's photograph until she was shown a second photographic array with the defendant's photograph repeated and (2) could not reliably identify the defendant. We are not persuaded.

A

The defendant principally argues that the photographic array fails the first prong of the test for constitutionality because, in the initial array, the victim was unable definitively to identify the defendant and instead selected the photographs of two different individuals as possibly being her assailant. The defendant complains that the enlarged version of the photographic array improperly repeated the defendant's photograph, thereby making the procedure unnecessarily suggestive.

In support of its conclusion that the identification procedure was not unnecessarily suggestive, the court found the following relevant facts. "The police used eight photographs in the array. The array was composed of photographs of individuals who all strongly resembled the defendant. There were no suggestions made to the victim that a photograph of the suspected perpetrator was located in the array presented to her. There were no verbal or physical hints given by the police to the victim to suggest to her who she should select from the array, or even that she should select someone from the array. Although both the small photographic array and the large photographic array contained the same

photographs, the police only prepared the large photograph at the request of the eighty-nine year old victim because both the police and the victim wanted to [be] sure of the identification. The victim had already selected a photograph of the defendant, prior to the police preparing the large photographic array." These findings of fact, which are amply supported by the record, have not been challenged on appeal.

"[A]ny analysis of unnecessary suggestiveness must be conducted in light of the totality of the circumstances and must focus specifically on the presentation of the photographic array itself as well as the behavior of law enforcement personnel to determine if the procedure was designed or administered in such a way as to suggest to the witness that a particular photograph represents the individual under suspicion.

"In evaluating the suggestiveness of a photographic array, a court should look to both the photographs themselves and the manner in which they were presented to the identifying witness. . . . We consider the following nonexhaustive factors in analyzing a photographic array for unnecessary suggestiveness: (1) the degree of likeness shared by the individuals pictured . . . (2) the number of photographs included in the array . . . (3) whether the suspect's photograph prominently was displayed or otherwise was highlighted in an impermissible manner . . . (4) whether the eyewitness had been told that the array includes a photograph of a known suspect . . . (5) whether the eyewitness had been presented with multiple arrays in which the photograph of one suspect recurred repeatedly . . . and (6) whether a second eyewitness was present during the presentation of the array." (Citation omitted; internal quotation marks omitted.) *State* v. *Marquez,* supra, 291 Conn. 161.

The defendant asks us to hold that the repetition of his photograph in the two photographic arrays was

unconstitutionally suggestive. The trial court rejected this claim because, in this case, the entire array was repeated, as distinguished from the situation in which a second array repeated only the defendant's photograph. The defendant offers no legal authority, and our research reveals none, for the proposition that showing the victim the *same* array in a different format would taint the identification in the absence of other suggestive circumstances. We conclude, therefore, that the court properly determined that the pretrial photographic array identification by the victim was admissible.

B

The defendant further argues that the court improperly concluded that the photographic identification was reliable because the evidence showed that the victim knew the defendant. Challenging the court's characterization of the evidence, the defendant points to testimony at trial that the defendant's name had been provided to the victim by her neighbor, that she refused to look at her assailant during the alleged assault and that her glasses had fallen off before the assault.

"[R]eliability is the linchhpin in determining the admissibility of identification testimony . . . . To determine whether an identification that resulted from an unnecessarily suggestive procedure is reliable, the corruptive effect of the suggestive procedure is weighed against certain factors, such as the opportunity of the [witness] to view the criminal at the time of the crime, the [witness'] degree of attention, the accuracy of [the witness'] prior description of the criminal, the level of certainty demonstrated at the [identification] and the time between the crime and the [identification]." (Internal quotation marks omitted.) *State* v. *Santos*, 104 Conn. App. 599, 619, 935 A.2d 212 (2007), cert. denied, 286

Conn. 901, 943 A.2d 1103, cert. denied, 555 U.S. 851, 129 S. Ct. 109, 172 L. Ed. 2d 87 (2008).

In support of its determination that the victim's photographic identification of the defendant was reliable, the court found the following facts. "The defendant and the victim were in close proximity during the daylight hours immediately prior to the sexual assault. The victim and her attacker were next to each other on the back porch; the attacker helped bring the victim's groceries into her home; and the attacker told the victim his name, where he lived and his age during the course of the assault. The victim had seen the defendant around the building prior to the sexual assault. The victim told the police the name of her attacker and made her identification through the photographic array two days after the sexual assault. The victim was very certain of her identification of the defendant as the person who sexually assaulted her. Furthermore, the fact that the defendant was known to the victim makes the identification very reliable under the totality of the circumstances."

The court properly considered all of the factors relevant to determining the overall reliability of the victim's identification. Even if some evidence in the record might have supported the conclusion that the identification was unreliable, the defendant has not shown that the court committed clear error in reaching the factual conclusions that it did. Furthermore, because we upheld the court's conclusion that the pretrial identification procedures were not unnecessarily suggestive, the defendant's arguments concerning reliability do not provide a basis for overturning the court's decision to admit evidence of the victim's pretrial identification of the defendant.

II

In addition to challenging the admissibility of the victim's photographic identification of the defendant,

the defendant also challenges the propriety of the victim's in-court identification. He argues that the victim's in-court identification was unconstitutionally tainted by the observation of Robert Nelson, a police officer, informing the victim that she had chosen the correct individual from the pretrial photographic array. The record is not adequate for review of this claim.

"Generally, an in-court testimonial identification need be excluded, as violative of due process, only when it is tainted by an out-of-court identification procedure which is unnecessarily suggestive and conducive to irreparable misidentification. . . . There is no constitutional requirement that an in-court identification confrontation be conducted as a lineup or be otherwise free of suggestion." (Citations omitted; internal quotation marks omitted.) *State* v. *Smith*, 200 Conn. 465, 469–70, 512 A.2d 189 (1986).

Our Supreme Court stated recently that "we agree with the Appellate Court, which has held that [t]he police officer's telling the victim that she had identified the suspect *after* she positively identified the defendant as her assailant does not render the identification procedure unnecessarily suggestive." (Emphasis in original; internal quotation marks omitted.) *State* v. *Marquez*, supra, 291 Conn. 164. The court in *Marquez* went on to note that such a comment by a police officer might "affect the weight or even the admissibility of a subsequent *in-court* identification . . . ." (Emphasis added.) Id.

Our review of the record discloses no findings by the trial court with respect to the conversation between the victim and the police officer on which the defendant relies. Although Nelson testified that he told the victim that she had chosen the correct person from the photographic array, the victim testified, to the contrary, that Nelson had not told her that she had selected the correct

person. On this unresolved state of the record, we do not know whether the court determined that, even if the victim had been told that her identification was correct, the identification was nonetheless admissible as a matter of law, or whether the court decided to admit the in-court identification on a factual finding that the victim had not been informed that she had chosen correctly.

Furthermore, the court offered no explanation what-soever for its denial of the defendant's motion to suppress the in-court identification. After the court issued its memorandum of decision, the defendant did request that the court articulate the basis for its decision to allow the in-court identification, and the court stated: "I'll double-check on the motion to suppress as far as the in-court identification. I thought that was covered." The defendant never made any further attempts to receive clarification on the court's decision. The defendant's claim is therefore unreviewable.

## III

To buttress his claim that the victim had mistakenly identified him as her assailant, the defendant sought to present expert testimony from Charles Morgan, a professor and researcher at Yale University, concerning the impact of trauma on memory and eyewitness identi-fication. After holding a hearing pursuant to *State* v. *Porter*, 241 Conn. 57, 64, 698 A.2d 739 (1997) (en banc), cert. denied, 523 U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d 645 (1998), the court concluded that the defendant had failed to establish that Morgan's testimony was relevant and denied the defendant's motion. The defen-dant's appeal challenges the validity of the court's evi-dentiary ruling.

The defendant claims that he is entitled to a new trial because Morgan's proposed testimony was relevant to assist him in his defense of mistaken identity to explain

why the victim might have misidentified him even though she had a detailed recollection of her assault. The defendant acknowledges that we review the court's evidentiary ruling for abuse of discretion. *Dinan* v. *Marchand*, 279 Conn. 558, 567, 903 A.2d 201 (2006). We are not persuaded by the defendant's claim.

The court found the following relevant facts concerning the proffered expert testimony. "[I]t is undisputed that . . . Morgan himself has special knowledge regarding eyewitness testimony studies. It is also undisputed that the conclusions that . . . Morgan has reached are not common to the average person. . . . Morgan's conclusion that stress negatively affects that ability of a person to remember what has occurred in fact runs counter to prevailing conventional wisdom. The witness' conclusion that certainty has no relationship to accuracy in identification also runs contrary to most accepted thought. However, . . . Morgan's testimony lacks any applicability to a case such as this where the defendant and the victim know each other. . . . Morgan's research does not include eyewitness identification where the two people know each other."

"In [*Porter*], we adopted the test for determining the admissibility of scientific evidence set forth in *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, [509 U.S. 579, 589–92, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)]. . . . First, [we noted] that the subject of the testimony must be scientifically valid . . . . Second, [we noted that] the scientific evidence must fit the case in which it is presented." (Internal quotation marks omitted.) *State* v. *Sorabella*, 277 Conn. 155, 215, 891 A.2d 897 (2006), cert. denied, 549 U.S. 821, 127 S. Ct. 131, 166 L. Ed. 2d 36 (2006). "It is well settled that [t]he true test of the admissibility of [expert] testimony is . . . whether the witnesses offered as experts have any peculiar knowledge or experience, not common to the world, which renders their opinions founded on such knowledge or

experience any aid to the court or the jury in determining the questions at issue. . . . Implicit in this standard is the requirement . . . that the expert's knowledge or experience must be directly applicable to the matter specifically in issue." (Internal quotation marks omitted.) *State* v. *Banks*, 117 Conn. App. 102, 116, 978 A.2d 519 (2009).

The defendant's first basis for challenging the exclusion of Morgan's testimony is his contention that Morgan would have provided scientific evidence that the elderly may be more vulnerable to gathering detailed information and attributing it to the wrong source. Such vulnerability might have lent support to the defendant's theory that the victim had learned the defendant's name and identify only after the alleged assault had occurred. Morgan's proposed testimony did not, however, support the defendant's contention. He claimed no expertise with respect to identifications by the elderly or by sexual assault victims. He was not prepared to testify that age necessarily reduces memory function.

The defendant's alternate argument challenges the court's determination that Morgan's proposed testimony was inadmissible because Morgan did not purport to address the mistaken identification of someone who was known to the person making the identification. In effect, the defendant maintains that, because the victim's testimony was not entirely consistent, the court was required to assume that their relationship was that of strangers and, on that assumption, was required to permit Morgan to testify. Our examination of the record persuades us, however, that the court's finding of fact was not clearly erroneous and fully supported the court's ruling excluding Morgan's testimony.[4] We conclude, therefore, that the court's evidentiary ruling was not an abuse of its discretion.

---

[4] There was, for example, testimony by the victim that she had previously seen the defendant on the front porch and back steps of her apartment building.

## IV

The defendant finally challenges the propriety of the trial court's jury instructions on the elements of burglary in the first degree. He argues that the jury instructions improperly (1) did not require the jury to reach a unanimous verdict and (2) permitted the jury to find "reckless attempt" as an aggravating factor, even though that mental state is not recognized by the laws of this state. Although the defendant did not object to the jury instructions at trial, he seeks review of these unpreserved claims under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

"[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any of these conditions, the defendant's claim will fail." (Emphasis in original.) Id. This court may "respond to the defendant's claim by focusing on whichever [*Golding*] condition is most relevant in the particular circumstances." Id., 240.

"It is well settled that jury instructions are to be reviewed in their entirety. . . . When the challenge to a jury instruction is of constitutional magnitude, the standard of review is whether it is reasonably possible that the jury [was] misled. . . . In determining whether it was . . . reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement . . . ."

(Citations omitted; internal quotation marks omitted.) *State* v. *Makee R.*, 117 Conn. App. 191, 198, 978 A.2d 549 (2009). We conclude that it was not reasonably possible that the jury was misled by the jury instructions and, therefore, are persuaded that the defendant's claim fails under the third prong of the *Golding* analysis.

## A

The defendant claims on appeal that the jury instructions were improperly duplicitous because the charge for burglary in the first degree permitted the jury to find the defendant guilty if it believed beyond a reasonable doubt that he had entered the victim's home with the intent to commit one of three possible crimes. The defendant posits that the court's instruction on unanimity only required that the jury agree that he had entered her home to commit *a* crime but did not make it clear that they had to agree on *which* crime the defendant had intended to commit. As a result of these allegedly incorrect instructions, the defendant argues that he was effectively charged with three separate crimes, violating his right to certainty in the crime charged.

The court instructed the jury on the elements of the crime of burglary in first degree as follows: "A person is guilty of burglary in the first degree when he unlawfully enters or unlawfully remains in a building with the intent to commit a crime therein. That is a crime other than the unlawful entry or remaining. And in the course of committing the offense he intentionally, knowingly or recklessly inflicts or attempts to inflict bodily injury on anyone. . . . In this case, the state claims that the crimes intended to be committed were sexual assault, sexual contact and unlawful restraint." The court addressed the elements of each crime and then continued the instructions: "The state doesn't need to prove the defendant intended to commit all of them but simply

that the defendant had the specific intent to commit any one of the above described crimes . . . ."

The defendant cites *State* v. *Cator*, 256 Conn. 785, 807, 781 A.2d 285 (2001), in which the defendant was convicted of conspiracy to commit murder and conspiracy to commit kidnapping. The court in *Cator* held that a conviction on *both* conspiracy charges when there was only one underlying agreement violated the defendant's constitutional protection against double jeopardy. Id., 806. Unlike the defendant in *Cator*, however, the present defendant was charged with and convicted of only *one* charge of burglary in the first degree, an element of which is the intention to commit *a* crime in the building. The defendant has cited no authority, and our research reveals none, for the proposition that the jury needs to agree on which crime the defendant intended to commit, so long as it agreed that he intended to commit a crime in the building. The jury was properly instructed that, to satisfy its burden of proof, the state was required to show that the defendant intended to commit a crime after his illegal entry, rather than intending to be on the property for some innocuous purpose. It was similarly proper to instruct the jury on the elements of the crimes that the defendant might have intended to commit.

B

The defendant contends that the jury could have interpreted the court's instruction on the aggravating factor in the charge on burglary in first degree to include a state of mind of "reckless attempt," which is a legal impossibility. Arguing that criminal attempt requires the defendant to have acted intentionally, the defendant contends that the instruction was misleading, citing *State* v. *Flowers*, 278 Conn. 533, 898 A.2d 789 (2006), for the proposition that the court cannot instruct a

jury to find that a defendant "intended an unintentional result . . . ." Id., 544. We disagree.

The court asked the jury to determine whether, while committing the alleged burglary, the defendant "intentionally, knowingly or recklessly inflicted or attempted to inflict bodily injury on someone, the victim." The court further instructed the jury that "[b]odily injury means impairment of physical condition or pain. I have previously defined intent, knowledge and recklessness for you, and you are to use those definitions here. The defendant need not actually [have] inflicted bodily injury on anyone as long as he attempted to inflict bodily injury on someone in the course of committing the burglary."

In *Flowers*, our Supreme Court examined the propriety of jury instructions that authorized the jury to find a defendant guilty of burglary if it found that he had intended to commit attempted assault. On appeal, the state did not contest the impropriety of the trial court's instructions but, rather, argued that any error was harmless. Our Supreme Court concluded that these instructions required reversal of the defendant's conviction because the trial court "impermissibly expanded the legal standard under which the defendant could have been convicted of burglary in the first degree . . . ." Id., 543. The court held that "a person cannot be charged with entering a building intending the specific result of failing to commit a crime." Id., 546–47.

The present case is distinguishable from *Flowers*. In that case, the challenged instructions related to the element of burglary requiring that a defendant enter a building with the intent to commit a crime. The defendant in this case was charged instead with burglary as defined by General Statutes (Rev. to 2003) § 53a-101 (a), which provides in relevant part: "A person is guilty of burglary in the first degree when he enters or remains

unlawfully in a building with intent to commit a crime therein and . . . (2) *in the course of committing the offense, he intentionally, knowingly or recklessly inflicts or attempts to inflict bodily injury* on anyone." (Emphasis added.) The most reasonable interpretation of the statute and of the court's instruction is that the aggravating factor is met by evidence that the defendant had intentionally, knowingly or recklessly inflicted bodily injury or attempted to inflict bodily injury. Taking the court's instructions as a whole, it is not reasonably possible that the jury was misled. The jury's finding that the defendant was guilty of two counts of sexual assault in the first degree makes it clear that the jury concluded that he intended to cause bodily injury. There is no possibility that the jury found the defendant guilty for recklessly attempting to cause bodily injury while simultaneously finding that he committed sexual assault.

The judgment is affirmed.

In this opinion the other judges concurred.